Kathleen M. Hurly (State Bar No. 169907)
Gabriel N. Rubin (State Bar No. 241659)
JACKSON LEWIS P.C.
50 California Street, 9th Floor
San Francisco, California 94111-4615
Telephone (415) 394-9400
Facsimile: (415) 394.9401
E-mail: Kathleen.Hurly@jacksonlewis.com
E-mail: Gabriel.Rubin@jacksonlewis.com

Attorneys for Defendants
THE PERMANENTE MEDICAL GROUP, INC.;
TRACI BEEBE and LORETTA REGAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH MAJID, PsyD, an individual,<br><br>Plaintiff,<br><br>v.<br><br>KAISER PERMANENTE SAN JOSE MEDICAL CENTER; PERMANENTE MEDICAL GROUP INC.; TRACI BEEBE, an individual; LORETTA REGAN, an individual; and DOES 1-50, inclusive,<br><br>Defendants. | Case No.<br><br>**DECLARATION OF GABRIEL N. RUBIN IN SUPORT OF DEFENDANTS' NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**<br><br>Complaint Filed: September 18, 2020<br>Trial Date: None Set |

I, Gabriel N. Rubin, declare as follows:

1.    I am an attorney licensed to practice law in the State of California and admitted to appear before this Court. I am an associate with the law firm of Jackson Lewis P.C., attorneys of record in this matter for Defendants THE PERMANENTE MEDICAL GROUP, INC.; TRACI BEEBE and LORETTA REGAN ("Defendants"). With the exception of matters based on information and belief, I have personal knowledge of the matters stated herein, and if called to testify as to these matters, I could and would do so competently. This Declaration is offered in support of Defendants' Notice of Removal of this Action to this Court.

2.    I am familiar with the pleadings and discovery in this Action.

3.    Attached to the Notice of Removal as **Exhibit A** is a true and correct copy of the

1

Summons, Complaint and Civil Case Cover Sheet served on Defendants on October 16, 2020.

4.     Attached to the Notice of Removal as **Exhibit B** is a true and correct copy of Defendant The Permanente Medical Group's Answer to Plaintiff's Complaint, which was timely filed in the Superior Court for Santa Clara County on December 1, 2020.

5.     Attached to the Notice of Removal as **Exhibit C** is a true and correct copy of Defendants Beebe's and Regan's Answer to Plaintiff's Complaint, which was timely filed in the Superior Court for Santa Clara County on April 21, 2021.

6.     Attached to the Notice of Removal as **Exhibit D** is a true and correct copy of Plaintiff's responses to form interrogatories in which Plaintiff alleges, for the first time, that The Permanente Medical Group ("TPMG") breached the collective bargaining agreement in place between Plaintiff's then union and TPMG.

I am a member of the bar of this Court and declare, under penalty of perjury, under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed this 2nd day of December 2021, at San Francisco, California.

_____
Gabriel N. Rubin

4867-2651-3669, v. 1

DECLARATION OF GABRIEL N. RUBIN IN SUPORT OF DEFENDANTS' NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT                                   Case No.

# EXHIBIT A



**Lori J. Costanzo**

**Adriana C. Moore**
*Of Counsel*

Reply to: jeremy.dvorak@costanzo-law.com

October 16, 2020

**VIA EMAIL**

kathleen.hurly@jacksonlewis.com

Kathleen Hurly
Jackson Lewis PC
50 California St., 9th Floor
San Francisco, CA 94111

**RE:     Majid, Sarah PsyD v. Kaiser Permanente San Jose Medical Center, et al.**
**Santa Clara Civil Case No. 20CV370951**
**Notice & Acknowledgement of Receipt**

Dear Ms. Hurly:

As counsel for Defendants Kaiser Permanente San Jose Medical Center, Permanente Medical Group, Inc., Traci Beebe, and Loretta Regan, attached please find a copy of the Summons, Complaint, Civil Lawsuit Notice, Civil Case Cover Sheet, and Santa Clara County ADR Information Sheet.

Please provide us with the signed Notice and Acknowledgment of Receipt attached in an email addressed to myself, Jeremy Dvorak (jeremy.dvorak@costanzo-law.com), Lily Smith (lily.smith@costanzo-law.com) and Lori Costanzo (lori@costanzo-law.com).

Failure to complete this form and return it to the sender within 20 days may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons upon you in any other manner permitted by law. If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, this form must be signed in the name of such entity by you or by a person authorized to receive service of process on behalf of such entity. Cal. Civ. Proc. § 415.30.

Please let us know if you have any questions or need further information.

Very truly yours,
COSTANZO LAW FIRM

*Jeremy Dvorak*
Jeremy Dvorak
Legal Assistant

Enclosures as Stated

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY:    STATE BAR NO: 142633<br>NAME: Lori Costanzo<br>FIRM NAME: Costanzo Law Firm APC<br>STREET ADDRESS: 111 W St. John Street #700<br>CITY: San Jose      STATE: CA    ZIP CODE: 95113<br>TELEPHONE NO.: 408-993-8493    FAX NO.: 408-933-8496<br>E-MAIL ADDRESS: lori@costanzo-law.com<br>ATTORNEY FOR (Name): Plaintiff Sarah Majid | FOR COURT USE ONLY |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Santa Clara
STREET ADDRESS: 191 N. First St
MAILING ADDRESS: 191 N. First St
CITY AND ZIP CODE: San Jose 95113
BRANCH NAME: Civil

Plaintiff/Petitioner: Sarah Majid, PsyD
Defendant/Respondent: Kaiser Permanente San Jose Medical Center, et al

| | |
|---|---|
| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER:<br>20CV370951 |

TO (insert name of party being served): Traci Beebe

---

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing: October 16, 2020

Jeremy Dvorak
(TYPE OR PRINT NAME)

*Jeremy Dvorak*
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of (to be completed by sender before mailing):

1. [x] A copy of the summons and of the complaint.
2. [x] Other (specify):

     Civil Lawsuit Notice
     Case Cover Sheet
     Santa Clara County ADR Info Sheet

(To be completed by recipient):

Date this form is signed: _____

_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

_____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

| | | |
|---|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY:** STATE BAR NO: 142633<br>NAME: Lori Costanzo<br>FIRM NAME: Costanzo Law Firm APC<br>STREET ADDRESS: 111 W St. John Street #700<br>CITY: San Jose STATE: CA ZIP CODE: 95113<br>TELEPHONE NO.: 408-993-8493 FAX NO.: 408-933-8496<br>E-MAIL ADDRESS: lori@costanzo-law.com<br>ATTORNEY FOR (Name): Plaintiff Sarah Majid | | *FOR COURT USE ONLY* |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Santa Clara
STREET ADDRESS: 191 N. First St
MAILING ADDRESS: 191 N. First St
CITY AND ZIP CODE: San Jose 95113
BRANCH NAME: Civil

Plaintiff/Petitioner: Sarah Majid, PsyD
Defendant/Respondent: Kaiser Permanente San Jose Medical Center, et al

| | |
|---|---|
| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER:<br>20CV370951 |

TO *(insert name of party being served):* The Permanente Medical Group, Inc.

---

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing: October 16, 2020

Jeremy Dvorak
(TYPE OR PRINT NAME)

► *Jeremy Dvorak*
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*

1. [x] A copy of the summons and of the complaint.
2. [x] Other *(specify):*

   Civil Lawsuit Notice
   Case Cover Sheet
   Santa Clara County ADR Info Sheet

*(To be completed by recipient):*

Date this form is signed: _____

_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

► _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
*www.courtinfo.ca.gov*

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO: 142633<br>NAME: Lori Costanzo<br>FIRM NAME: Costanzo Law Firm APC<br>STREET ADDRESS: 111 W St. John Street #700<br>CITY: San Jose STATE: CA ZIP CODE: 95113<br>TELEPHONE NO.: 408-993-8493 FAX NO.: 408-933-8496<br>E-MAIL ADDRESS: lori@costanzo-law.com<br>ATTORNEY FOR (Name): Plaintiff Sarah Majid | FOR COURT USE ONLY |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Santa Clara
STREET ADDRESS: 191 N. First St
MAILING ADDRESS: 191 N. First St
CITY AND ZIP CODE: San Jose 95113
BRANCH NAME: Civil

Plaintiff/Petitioner: Sarah Majid, PsyD
Defendant/Respondent: Kaiser Permanente San Jose Medical Center, et al

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>20CV370951 |
|---|---|

TO (insert name of party being served): Loretta Regan

---

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing: October 16, 2020

Jeremy Dvorak
(TYPE OR PRINT NAME)

▶ *Jeremy Dvorak*
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of (to be completed by sender before mailing):

1. [x] A copy of the summons and of the complaint.
2. [x] Other (specify):

   Civil Lawsuit Notice
   Case Cover Sheet
   Santa Clara County ADR Info Sheet

*(To be completed by recipient):*

Date this form is signed: _____

_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

---

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO: 142633<br>NAME: Lori Costanzo<br>FIRM NAME: Costanzo Law Firm APC<br>STREET ADDRESS: 111 W St. John Street #700<br>CITY: San Jose     STATE: CA    ZIP CODE: 95113<br>TELEPHONE NO.: 408-993-8493    FAX NO.: 408-933-8496<br>E-MAIL ADDRESS: lori@costanzo-law.com<br>ATTORNEY FOR (Name): Plaintiff Sarah Majid | FOR COURT USE ONLY |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Santa Clara
STREET ADDRESS: 191 N. First St
MAILING ADDRESS: 191 N. First St
CITY AND ZIP CODE: San Jose 95113
BRANCH NAME: Civil

Plaintiff/Petitioner: Sarah Majid, PsyD
Defendant/Respondent: Kaiser Permanente San Jose Medical Center, et al

| | |
|---|---|
| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER:<br>20CV370951 |

TO *(insert name of party being served):* Kaiser Permanente San Jose Medical Center

---

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing: October 16, 2020

Jeremy Dvorak
(TYPE OR PRINT NAME)

*Jeremy Dvorak*
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*

1. [x] A copy of the summons and of the complaint.
2. [x] Other *(specify):*

     Civil Lawsuit Notice
     Case Cover Sheet
     Santa Clara County ADR Info Sheet

*(To be completed by recipient):*

Date this form is signed: _____

_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

_____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:** KAISER PERMANENTE SAN JOSE MEDICAL
*(AVISO AL DEMANDADO):* CENTER; PERMANENTE MEDICAL GROUP,
INC; TRACI BEEBE, an individual; LORETTA
REGAN, an individual; and DOES 1-50, inclusive

E-FILED
9/18/2020 11:17 AM
Clerk of Court
Superior Court of CA,
County of Santa Clara
20CV370951
Reviewed By: M Vu
Envelope: 4957766

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

SARAH MAJID, PsyD, an individual

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*  Superior Court of CA - Santa Clara

**CASE NUMBER:**
*(Número del Caso):*
20CV370951

191 N. First Street
San Jose, CA 95113

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Lori J. Costanzo, SBN 142633; 111 W. St. John Street, Suite 700, San Jose, CA 95113 (408) 993-8493

DATE: 9/18/2020 11:17 AM      Clerk of Court      Clerk, by      M Vu      , Deputy
*(Fecha)*                                      *(Secretario)*                              *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):*  Traci Beebe

under: ☐ CCP 416.10 (corporation)             ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)             ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)       ☐ CCP 416.90 (authorized person)
☒ other *(specify):*  Defendant Traci Beebe, an employee of Defendant Permanente Medical
Group
4. ☐ by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

# SUMMONS
## *(CITATION JUDICIAL)*

**NOTICE TO DEFENDANT:** KAISER PERMANENTE SAN JOSE MEDICAL
*(AVISO AL DEMANDADO):* CENTER; PERMANENTE MEDICAL GROUP,
INC; TRACI BEEBE, an individual; LORETTA
REGAN, an individual; and DOES 1-50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

SARAH MAJID, PsyD, an individual

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

E-FILED
9/18/2020 11:17 AM
Clerk of Court
Superior Court of CA,
County of Santa Clara
20CV370951
Reviewed By: M Vu
Envelope: 4957766

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of CA - Santa Clara

191 N. First Street
San Jose, CA 95113

**CASE NUMBER:**
*(Número del Caso):*
**20CV370951**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Lori J. Costanzo, SBN 142633; 111 W. St. John Street, Suite 700, San Jose, CA 95113 (408) 993-8493

DATE: 9/18/2020 11:17 AM          Clerk of Court          Clerk, by          M Vu          , Deputy
*(Fecha)*          *(Secretario)*          *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Permanente Medical Group, Inc.

under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
      ☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
      ☐ CCP 416.40 (association or partnership)          ☐ CCP 416.90 (authorized person)

      ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:** KAISER PERMANENTE SAN JOSE MEDICAL
*(AVISO AL DEMANDADO):* CENTER; PERMANENTE MEDICAL GROUP,
INC; TRACI BEEBE, an individual; LORETTA
REGAN, an individual; and DOES 1-50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

SARAH MAJID, PsyD, an individual

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

E-FILED
9/18/2020 11:17 AM
Clerk of Court
Superior Court of CA,
County of Santa Clara
20CV370951
Reviewed By: M Vu
Envelope: 4957766

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of CA - Santa Clara

191 N. First Street
San Jose, CA 95113

**CASE NUMBER:**
*(Número del Caso):*
20CV370951

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Lori J. Costanzo, SBN 142633; 111 W. St. John Street, Suite 700, San Jose, CA 95113 (408) 993-8493

DATE: 9/18/2020 11:17 AM    Clerk of Court    Clerk, by   M Vu    , Deputy
*(Fecha)*    *(Secretario)*    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Loretta Regan

under: ☐ CCP 416.10 (corporation)         ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☒ other *(specify):* Defendant Loretta Regan, an employee of Defendant Permanente Medical Group
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:** KAISER PERMANENTE SAN JOSE MEDICAL
*(AVISO AL DEMANDADO):* CENTER; PERMANENTE MEDICAL GROUP,
INC; TRACI BEEBE, an individual; LORETTA
REGAN, an individual; and DOES 1-50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

SARAH MAJID, PsyD, an individual

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

E-FILED
9/18/2020 11:17 AM
Clerk of Court
Superior Court of CA,
County of Santa Clara
20CV370951
Reviewed By: M Vu
Envelope: 4957766

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of CA - Santa Clara

191 N. First Street
San Jose, CA 95113

**CASE NUMBER:**
*(Número del Caso):*
20CV370951

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Lori J. Costanzo, SBN 142633; 111 W. St. John Street, Suite 700, San Jose, CA 95113 (408) 993-8493

DATE: 9/18/2020 11:17 AM    Clerk of Court    Clerk, by    M Vu    , Deputy
*(Fecha)*    *(Secretario)*    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Kaiser Permanente San Jose Medical Center

under: ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
☒ other *(specify):* A Public Entity
4. ☐ by personal delivery on *(date):*

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Lori J. Costanzo, SBN 142633<br>Costanzo Law Firm, APC<br>111 W. St. John Street, Suite 700<br>San Jose, CA 95113<br>TELEPHONE NO.: (408) 993-8493   FAX NO.: (408) 993-8496<br>ATTORNEY FOR *(Name):* Plaintiff Sarah Majid | **Electronically Filed<br>by Superior Court of CA,<br>County of Santa Clara,<br>on 9/18/2020 11:17 AM<br>Reviewed By: M Vu<br>Case #20CV370951<br>Envelope: 4957766** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Clara
STREET ADDRESS: 191 N. First Street
MAILING ADDRESS: 191 N. First Street
CITY AND ZIP CODE: San Jose, 95113
BRANCH NAME: Civil

CASE NAME:
Sarah Majid, PsyD v. Kaiser Permanente San Jose Medical Center, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| [✓] **Unlimited**<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] **Limited**<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 20CV370951<br><br>JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[✓] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✓] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [✓] punitive
4. Number of causes of action *(specify):* 13
5. This case [ ] is [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 9/18/2020

Lori J. Costanzo
_____
(TYPE OR PRINT NAME)

► *Lori J. Costanzo*
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or
    toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer
        or wrongful eviction)*
    Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
        domain, landlord/tenant, or
        foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment *(non-
        domestic relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
        harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
        Claim
    Other Civil Petition

**Page 2 of 2**

**CIVIL CASE COVER SHEET**

Lori J. Costanzo, SBN 142633
COSTANZO LAW FIRM, APC
111 W. St. John Street, Ste. 700
San Jose, CA 95113
Telephone: (408) 993-8493
Fax: (408) 993-9496
Lori@costanzo-law.com

E-FILED
9/18/2020 11:17 AM
Clerk of Court
Superior Court of CA,
County of Santa Clara
20CV370951
Reviewed By: M Vu

Attorneys for Plaintiff, SARAH MAJID

## SUPERIOR COURT OF CALIFORNIA – UNLIMITED CIVIL JURISDICTION

## IN AND FOR THE COUNTY OF SANTA CLARA

20CV370951

| | |
|---|---|
| SARAH MAJID, PsyD, an individual; | Case No. |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| -v- | 1. **RACE AND NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF GOV'T CODE §-12940(a).** |
| KAISER PERMANENTE SAN JOSE MEDICAL CENTER; PERMANENTE MEDICAL GROUP INC.; TRACI BEEBE, an individual; LORETTA REGAN, an individual; and DOES 1-50, inclusive. | 2. **GENDER DISCRIMINATION IN VIOLATION OF GOV'T CODE §-12940(a).** |
| | 3. **DISABILITY DISCRIMINATION IN VIOLATION OF GOV'T CODE §-12940(a).** |
| | 4. **FAILURE TO ACCOMMODATE IN VIOLATION OF GOV'T CODE §-12940(m).** |
| | 5. **FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF GOV'T CODE § 12940(n).** |
| Defendants. | 6. **RELIGIOUS DISCRIMINATION IN VIOLATION OF CALIFORNIA GOVERNMENT CODE §12940(a)** |
| | 7. **FAILURE TO ACCOMMODATE IN VIOLATION OF GOV'T CODE §-12940(l).** |
| | 8. **RETALIATION (Gov. Code § 12940(h))** |
| | 9. **FAILURE TO TAKE STEPS TO PREVENT DISCRIMINATION IN VIOLATION OF GOV'T CODE §12940(k)** |
| | 10. **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY** |
| | 11. **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** |
| | 12. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** |
| | 13. **DEFAMATION PER QUOD** |

**Request for Punitives and Demand for Jury Trial (Unlimited Civil)**

**COMES NOW** Plaintiff, DR. SARAH MAJID, (hereinafter referred to as "Dr. Majid" or "Plaintiff"), by and through her attorneys of record herein, who bring this Complaint against the above named Defendants, and in support thereof allege the following:

<u>**PARTIES**</u>

1. At all pertinent times mentioned in the complaint, Plaintiff is and was a resident of the County of Santa Clara, California and was employed by Defendants KAISER PERMANENTE SAN JOSE MEDICAL CENTER and PERMANENTE MEDICAL GROUP INC. and Plaintiff was employed as a Psychologist with Kaiser Foundation Hospital, located at Kaiser Foundation Hospitals San Jose Medical Center, 275 Hospital Parkway, San Jose, CA 95119, in the County of Santa Clara, California.

2. Defendants, KAISER PERMANENTE SAN JOSE MEDICAL CENTER and PERMANENTE MEDICAL GROUP INC. have, at all times mentioned herein, operated the Kaiser hospital located at 275 Hospital Parkway, San Jose, CA 95119, in the County of Santa Clara, California where Plaintiff was employed, and each of them are "employers," as that term is defined in the California Fair Employment and Housing Act and under the California Labor Code.

3. At all pertinent times mentioned in the complaint, Defendant, TRACI BEEBE, is and was a resident of the County of Santa Clara, California and was employed by Defendants KAISER PERMANENTE SAN JOSE MEDICAL CENTER and PERMANENTE MEDICAL GROUP INC. and Defendant was employed as an Office Manager of the Chronic Pain Program with Kaiser Foundation Hospital, located at Kaiser Foundation Hospitals San Jose Medical Center, 275 Hospital Parkway, San Jose, CA 95119, in the County of Santa Clara, California.

4. At all pertinent times mentioned in the complaint, Defendant, LORETTA REGAN, is and was a resident of the County of Santa Clara, California and was employed by Defendants KAISER

PERMANENTE SAN JOSE MEDICAL CENTER and PERMANENTE MEDICAL GROUP INC. and Defendant was employed as an Office Manager of the Chronic Pain Program with Kaiser Foundation Hospital, located at Kaiser Foundation Hospitals San Jose Medical Center, 275 Hospital Parkway, San Jose, CA 95119, in the County of Santa Clara, California.

5. At all times mentioned in the causes of action into which this paragraph is incorporated by reference, each and every defendant was the agent or employee of each and every other defendant. In doing the things alleged in the causes of action into which this paragraph is incorporated by reference, each and every defendant was acting within the course and scope of this agency or employment and was acting with the consent, permission, and authorization of each of the remaining defendants. All actions of each defendant alleged in the causes of action into which this paragraph is incorporated by reference were ratified and approved by the officers or managing agents of every other defendant.

6. The true names and capacities of defendants DOES 1 through 50, inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiff who therefore sues said Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when the same have been ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, that plaintiff's damages as herein alleged were proximately caused by those defendants, and that the defendants are, therefore, jointly and severally liable for the damages caused to Plaintiff. Plaintiff is informed and believes and, upon such information and belief, alleges that each of the defendants including Does 1 through 50, inclusive, were at all times herein mentioned, acting in concert with, and in conspiracy with, each and every one of the remaining defendants.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to California Code of Civil Procedure (CCP) § 410.10 and California Constitution Article VI, Section 5. The amount in controversy, exclusive of interest and costs, exceeds the sum of $25,000.00.

8. This Court has jurisdiction over Defendant PERMANENTE MEDICAL GROUP INC. (hereinafter referred to as "Kaiser" or "Defendant") as a California not-for-profit business entity.

9. Venue is proper pursuant to CCP § 395(a) in that Plaintiff is informed and believes and thereon alleges, among other things that the obligations herein sued upon arose, occurred, happened and were and now are due, owing and payable from Defendant to Plaintiff in the above-entitled judicial district in the County of SANTA CLARA, State of California.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. Dr. Majid has exhausted all administrative remedies necessary to bring this action. she filed a charge of discrimination (DFEH # 201911-08274913) with the Department of Fair Employment and Housing on November 13, 2019. She was issued a right-to-sue notice on or about November 13, 2019. A copy of Plaintiff's right-to-sue notice is attached herein as **Exhibit "A."**

## FACTUAL ALLEGATIONS

11. Dr. Sarah Majid is a 49-year-old woman of Indian heritage who received her PsyD in Clinical Psychology from the California School of Professional Psychology.

12. Dr. Majid began her employment with Kaiser in 2006 as a behavioral medicine specialist psychologist in the internal medicine outpatient program and was a model employee. Early on in her career with Kaiser, all of her performance evaluations were positive, and she had no

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET #700
SAN JOSE, CA 95113

problems within the department, partially due to it being fully staffed – there was a psychologist in each outpatient internal medicine/family practice department.

13. Dr. Majid's duties included: individual assessments, interventions, treatment plan development, administration of neuropsychological cognitive screening, case consultation, coordination of care with health care providers in various departments, co-facilitator for chronic pain management programs and post program support groups, and was requested by her supervisor to take the role of BMS Department Representative for the Facility Quality Control Committee Quarterly Meetings.

14. From 2010 to 2017, all of her performance evaluations were either "meets" or "exceeds" standards overall and she received positive competency assessments with a "fully effective" overall score from 2007 through 2009.

**A. Dr. Majid was Treated Differently Compared to Her Caucasian Counterparts**

    **i. Dr. Majid was Given a Greater Workload than her White, Male Counterpart**

15. Upon entering the Chronic Pain Program, Dr. Majid was forced to work in a severely understaffed department. Dr. Majid was often the only psychologist present in the workplace.

16. Dr. Majid worked with another psychologist, Dr. Richard Beaver, PhD., from February 2007 to 2018. Dr. Beaver is a Caucasian male and told Dr. Majid that he was not going to work more than he had to and was only there for the money and not for the betterment of the patients or for the department, which were the primary goals of Dr. Majid.

17. In fact, at the time of Dr. Majid's recruitment into the department, Dr. Michelle Wolf-Bloom, PhD informed Dr. Majid that both herself and Dr. James Moran, PhD (psychologists working in the chronic pain management program department) attempted to dissuade his hire to the department chief, Dr. Darshan Patel, MD., due to his apparent lack of incentive to contribute to

the advancement of the department. Dr. Wolf-Bloom told Dr. Majid she believed Dr. Patel was influenced by Dr. Beaver's gender.

18. Dr. Beaver was minimally involved in the creation of the Level 2+ 10-week patient training program, leaving Dr. Majid to create the program during work hours in addition to her other patient duties. She was forced to take work home to complete the project by the expected deadline established by Dr. Patel.

19. In 2014, Dr. Beaver was formally given permission to change his schedule from 40 hours/week to 36 hours/week, then 44 hours per each two week pay period, which required Dr. Majid to work more to pick up the slack and teach additional classes.

20. In 2015, Dr. Beaver was given permission by Dr. Patel and manager Traci Beebe to only work three (3) days a week yet was still classified as a full-time employee until Dr. Majid's termination, leaving her to handle the bulk of the caseload and be the point person for all staff, doctors and patients, on a virtual 24/7 basis.

21. Dr. Patel created a toxic work environment for Dr. Majid and directed each of the managers to treat her and Dr. Beaver differently. Dr. Patel set expectations with each of the managers who came into the department and all the physicians in terms of the heavy load Dr. Majid was expected to carry.

22. Dr. Majid was forced to work nine and a half (9.5) hours, Monday through Thursday, respectively, and five (5) hours on Fridays. She only took a thirty (30) minute, unpaid lunch break each day except Fridays.

23. Traci Beebe, Department Manager, regularly asked Dr. Majid to come in early to cover for Dr. Beaver when he was not present, so her days were sometimes extended to eleven (11) hours, forcing her to take work home and catch up on program development over weekends.

24. In addition, Ms. Beebe directed Front Staff, Registered Nurses and Pharmacists to seek assistance from Dr. Majid for any office problems, including arguments between staff members, patient issues and those issues involving other departments in the facility, further extending her workdays not to mention her stress.

25. Moreover, Dr. Majid's schedule was constantly being added to with patient appointments that often resulted in her having to miss lunch so she could keep up with her added tasks. This proved to be very stressful and detrimental to her diabetic condition. Whereas, Dr. Beaver's schedule was rarely altered and when it was altered by management to increase patient access, Dr. Beaver refused and changed it back to its previous format including a 30-minute office time following a 30-minute lunch break allowing him an hour break each day he worked.

26. Dr. Majid requested she be allowed to take Fridays off for religious reasons. She was granted the time off, however, when she returned, she was forced to make up the work not completed by Dr. Beaver, even if he was present in the department that day, he would not cover for Plaintiff. This practice was especially prevalent under office manager, Traci Beebe.

27. When Dr. Majid left on vacation, Dr. Beaver would request that Ms. Beebe ask Dr. John Guzman, PhD to "lend" their department psychologists from the BMS department to teach classes that Dr. Majid normally taught. However, when she made a similar request during Dr. Beaver's 3 to 4 week vacation each year, Dr. Majid was denied. In addition, she was expected to see additional patients in her schedule to maintain the department's access rate. This occurred consistently during the last three (3) years after Dr. Beaver decreased his weekly schedule from five (5) to eventually three (3) days per week.

28. At no time was Dr. Beaver chastised for his actions. During the final year of Dr. Beaver's time in the department, his participation in the program decreased significantly with even the front

Costanzo Law Firm, APC
111 W. St. John Street #700
San Jose, CA 95113

staff, including Connie Juarez MA, discussing that Dr. Beaver was "already in retirement" and "not really in the department" to which he agreed. Ms. Juarez reported this conversation to Ms. Beebe while both Dr. Majid and Ann Gillick RN were present, yet no changes were made and certainly no disciplinary actions resulted against Dr. Beaver.

### ii. Dr. Majid was Given a Greater Workload than Her Newly Hired Caucasian, Female Counterpart

29. When Dr. Heather Maratella, PsyD. began work in the department in September of 2019, Dr. Patel and Ms. Beebe approved of Dr. Maratella's schedule to have far fewer patients than Dr. Majid. And with each patient appointment, she was given additional time to complete her chartwork.

30. In addition, Dr. Maratella was able to stop assessing patients for whom English is a second language. The patient informed consent forms were solely in English, which created an ethical dilemma when a non-English speaking patient were expected to sign a document he/she did not understand. This was an issue Dr. Majid raised with Dr. Patel at the time of her entry into the chronic pain program department in 2007 and repeatedly thereafter with each office manager. Dr. Majid simply requested the consent forms to be translated into the most spoken languages represented in the South San Francisco Bay area (including Spanish, Tagalog, Mandarin, Hindi). She was told repeatedly that Kaiser Permanente provided care to all without discrimination and each patient would have to either bring an English speaking person with them to the appointment in order to complete the necessary forms of consent and mood assessment or the office's nurse would review the material with the patient prior to seeing the psychologists. This rarely occurred, leaving Dr. Majid to have to use her evaluation time to review the forms with the patient using the language translation assistance line utilized by

Kaiser Permanente System. This obviously extended the appointment time, later requiring overtime to complete charting.

31. Furthermore, Dr. Maratella was not required to: 1. teach one of the three 10-week, 2.5 to 3.5 hour classes, 2. stop leading the two (2) Chronic Pain Program Booster classes, and 3. decrease her participation in the Understanding Chronic Pain Introduction to Chronic Pain Program class taught weekly to perspective patients.

32. In addition to being expected to maintain a full load of patients with far fewer charting times in her schedule, Dr. Majid was also expected to teach all of the classes listed above that Dr. Maratella was excused from teaching. Dr. Majid was expected to do this even when Dr. Beaver was away from the office during his 2-4 week vacations.

33. As the only female of Indian heritage, Dr. Majid's concerns were ignored and her motivation to work for the betterment of the department was abused.

34. Dr. Majid's requests for additional help with both the workload and the workflow of the department, discussed herein, were made in an attempt to maintain the high level of standards for patient care to which she is accustomed. The department's failure to make the changes she requested during her time with Kaiser, but then to enact those same requests within the four (4) months after the start date of the newly hired white female psychologist speaks volumes.

        **iii.**     **Dr. Majid Made Multiple Complaints to Management Regarding Her Increased Workload**

35. As this working arrangement began to take a toll on her health, Dr. Majid complained to her supervisors and co-workers that she cannot manage the entire department on her own; but the issue was never addressed nor was it alleviated.

36. Specifically, on numerous occasions, Dr. Majid expressed to her clinical supervisor, Dr. John Guzman, PhD., that the workload was unevenly distributed between herself and Dr. Beaver and that she was handling the majority of it. Dr. Guzman's response was to redirect Dr. Majid to speak with an office manager and offered her zero support.

37. Dr. Majid did what Dr. Guzman said, and she went to her office manager for assistance. Dr. Majid spoke with CPP office manager, Traci Beebe, who coerced Dr. Majid into thinking that she was on her side by making statements such as "what we say now is just between you and me, consider this Vegas" (referring to the famous saying, "what happens in Vegas, stays in Vegas").

38. Dr. Majid and Ms. Beebe had multiple conversations about the disparity in workload and the unrealistic expectation to see additional patients when Dr. Majid's schedule was already full. Rather than helping Dr. Majid, Ms. Beebe simply told her that all staff needed to work harder. Ms. Beebe told Dr. Majid that she would encourage the department chief, Dr. Darshan to hire additional help. However, this proved to be a lie since Dr. Beaver continued to be listed as a full-time employee (even though he was only working part-time), there appeared to be no need to hire a new psychologist. And, once they did hire another psychologist, she was given the least about of job duties to perform.

39. Dr. Majid met with her union representative, Ms. Sam Page, in 2014 when she was struggling to keep up with this heavy workload after Dr. Beaver changed his weekly schedule to reduce his hours every other week. Ms. Page arranged a meeting between Dr. Majid, Ms. Beebe and Dr. Guzman to discuss methods of helping Dr. Majid.

40. Although Ms. Beebe and Dr. Guzman agreed to meet with Dr. Majid on a regular basis to ensure she no longer had an unrealistically large workload, these meetings never took place.

41. Dr. Majid told Ms. Beebe on multiple occasions and in front of witnesses, such as clinic nurses Angela Wright, Valerie Heglar and Anne Gillick, that she was "drowning" under the workload and that Ms. Beebe was expecting "blood from a stone."

42. Furthermore, Dr. Majid told Ms. Beebe and Dr. Patel, individually and in monthly staff department meetings, that she could not keep up with the workload after Dr. Beaver reduced his hours by fourteen (14) hours a week and that she needed help.

43. Dr. Patel and Ms. Beebe's were clearly aware of the strain Dr. Majid was under and claimed to both be equally perplexed as to why Dr. Beaver was still employed when he was contributing so little. This is evidenced by the multiple conversations where Dr. Patel and Ms. Beebe separately expressed to Dr. Majid that Dr. Beaver had already emotionally and psychologically checked-out and he was doing far less work than what the department clearly needed. They both also recognized that speaking to Dr. Beaver regarding patient care and office concerns was futile as he was no longer interested in treating patients or advancing the betterment of the department.

44. Dr. Patel and Ms. Beebe's solution was to turn to Dr. Majid to make up the workload and then encouraged the rest of the department to do the same. Ms. Beebe even directed the support staff (medical assistants, program assistants, two nurses, two pharmacists, and physical therapists) to bring clinical and interpersonal staff issues to Dr. Majid to manage – which definitely took up a considerable amount of time and hindered her ability to complete her daily tasks.

45. These are just a few of a countless number of instances where Dr. Majid sought help from her superiors to ensure every patient received Kaiser's full attention while simultaneously maintaining her health and wellbeing. Dr. Majid was set up to fail. No other employee in her

department was subjected to this extra workload and constant dismissal from management.  The only difference between Dr. Majid and her colleagues was that she is Indian and female.

### iv.    Dr. Majid was Excluded from Meetings by Management and Targeted by Multiple CPP Office Managers

46. Shortly after making complaints, Dr. Guzman routinely began excluding Dr. Majid from the BMS department weekly meetings.  Dr. Majid asked Dr. Guzman for years to have increased participation in the weekly meetings, but he denied each and every request.

47. In addition to being excluded from her own team meetings, Dr. Majid was targeted by her CPP office manager, Kim Warhola from 2007 onward.

48. At the direction of the chief of the department, Dr. Patel, Ms. Warhola created a high stress environment for Dr. Majid by increasing the workload for both Dr. Majid and Dr. Beaver however, the increased workload intended for two people, fell solely on Dr. Majid.  Ms. Warhola and all other supervisors were aware of this uneven distribution of work.

49. Ms. Warhola also constantly chastised Dr. Majid for not being in the office at all times, even though Dr. Majid's contract states that her schedule can vary based on client meetings.

50. On one occasion, Dr. Majid arrived to her office only to find Ms. Warhola sitting in the dark in her office chair waiting for Dr. Majid.  Dr. Majid did not have any patients scheduled at that time and she arrived well before her next scheduled appointment.  Ms. Warhola's behavior was meant to intimidate Dr. Majid.  This inappropriate micromanagement was not done to any other psychologist.

51. Furthermore, Dr. Majid was also targeted by another CPP office manager, Loretta Regan.  Although Ms. Regan created a stressful environment for all staff under her management, she targeted Dr. Majid in particular.

52. For example, Ms. Regan approved vacation time for Dr. Majid, but then promptly forgot and demanded proof of her prior approval. Ms. Regan falsely accused Dr. Majid of attempting to cheat Kaiser and threatened to revoke the vacation time she had already approved. Ms. Regan took this a step further by filing a complaint against Dr. Majid. Ms. Regan fabricated a story and filed a complaint to tarnish Dr. Majid's reputation, increase her stress levels, and attempted to remove her from the department.

53. In a meeting with Union Representative, Greg Tegencamp, Dr. Majid, Ms. Regan and Administrative Representative, Sue Colby, the charge against her was dismissed and removed from her record but the stress and betrayal of such adverse employment action could not be undone.

54. Finally, Dr. Majid was targeted by a third CPP office manager, Traci Beebe, throughout her tenure; from 2014 to her termination.

55. Dr. Majid received a call from Traci Beebe on March 6th, 2018, the last day of her vacation in New Orleans, asking if she was returning to work the next day, which was the day of her scheduled arrival. Dr. Majid assured her that she would be arriving that day and was stunned to even receive the phone call. However, Ms. Beebe never informed Dr. Majid that she wanted her to arrive 1 hour prior to her scheduled start time so that she could cover the Team Evaluation for Dr. Beaver who had been out on medical leave for the past week. As a result, on March 7th, Dr. Majid was berated by the chief of the department and acting physician, Dr. Patel, in front of staff and patients for having "a poor work ethic" and not being present for the 8am Team Evaluation. Dr. Majid later discovered that Ms. Beebe never informed Dr. Patel nor herself of Dr. Beaver's leave of absence, or that she was expected to provide coverage for him. Witnesses

to this were co-workers Connie Juarez, PA, and the receptionist (possibly the RN Ann Gillick and Sonya Borchers, MA).

56. Dr. Majid later discovered that not only did Dr. Beaver inform Ms. Beebe the previous week while Dr. Majid was out of the office that he was closing his schedule due to illness, he had actually provided a VOT letter from his physician directly to Ms. Beebe in front of the CPP PSR, MA & PA. At that time, Dr. Majid's patients were canceled without her knowledge and she was scheduled to cover the 8am Team Evaluation instead. When she informed both Dr. Patel and Ms. Beebe of the information she had discovered, Ms. Beebe's response was: "these things sometimes happen" and was encouraged to contact those patients who had been cancelled from her schedule the previous week during her charting time "as a courtesy," further adding to that day's work load.

57. Moreover, Dr. Majid discovered that Ms. Beebe had taken a new computer with faster processing speeds specifically allocated to Dr. Majid to support her in electronic charting, while she had left Dr. Majid with the old department computer registered to Ms. Beebe with Kaiser's IT department. This old computer crashed and stalled often causing unnecessary delays for Dr. Majid. When she confronted Ms. Beebe of this, she denied it and never gave Dr. Majid a more efficient laptop.

58. Furthermore, Ms. Beebe would repeatedly called Dr. Majid the same day to arrive early to the office prior to her designated start time to provide patient care when Dr. Beaver was not present to teach his class or see his patients, stating Dr. Majid was obligated to provide patient care.

59. For example, in the Spring of 2018, Ms. Beebe called Dr. Majid Tuesday at 8am stating that a patient was waiting in the CPP Reception area for the Tier 1, 5-week Pain Management Class Series to start adding that "there is no one here to teach the class." Dr. Majid asked her where

Dr. Beaver was to which she stated with agitation in her voice, "I don't know but we need to meet patients' needs" and demanded that Dr. Majid come in early. While driving to the campus, Ms. Beebe called and stated "you don't have to come now." The front staff had informed her that the patients had been notified to come at 9:45am to attend the second portion of the class led by another psychologist, who arrived later that morning. Upon Dr. Majid's arrival, she told Ms. Beebe that she because of all the rushing, she was unable to complete her morning medical and self-care routine. Ms. Beebe appeared amused, at which point Dr. Majid tried explaining to Ms. Beebe the stress of rushing to the office in such a manner had triggered a migraine. Ms. Beebe replied sarcastically, "You want to help. That's who you are." Dr. Majid successfully met with her morning patients but could not stay for the remainder of the day due to the significant migraine headache brought on by the stress of the morning events. This migraine lasted the rest of week and affected her ability to work.

**B. Male Physicians in the Department Have a History of Treating Female Psychologists Unequally**

60. Male physicians, especially department chief Dr. Patel, have a history of treating female psychologists less than males. Dr. Majid was warned by Michelle Wolf-Bloom, PhD., a psychologist who worked in the Pain Management Program department prior to her hiring, about adverse employment actions she experienced during her employment. Dr. Wolf-Bloom was removed from the department while she was on maternity leave and had all of her personal items from her office placed in a pile in Dr. Majid's office. She warned Dr. Majid that the physicians of Indian descent, led by Dr. Patel treated her with hostility, dismissiveness, and disdain during her time in the office but she thought that since Dr. Majid shared a common ethnic background she would be treated differently.  That was not the case.

**i. Dr. Majid and Other Females in the Department Were Met with the Same Treatment as Dr. Wolf-Bloom**

61. While Dr. Majid was able to brush off some of the initial experiences similar to Dr. Wolf-Bloom's, it eventually became evident that Dr. Majid and the other women in the department were being treated with varying degrees of anger and hostility by the male Physicians, including Darshan Patel, MD., Prasad Movva, MD., and Shabeen Tharani, MD. This adverse treatment involved unrealistic expectations regarding the care of patients with comorbid medical conditions, drug misuse and psychological issues. Those affected included Dr. Majid, the Registered Nurses, the Pharmacists, and the MA.

**C. Dr. Majid Suffered Health Complications as a Result of Being Overworked**

62. Due to her department being chronically understaffed, Dr. Majid began to experience physical problems from work related stress. Dr. Majid suffers with Type I Diabetes, Migraine Headaches, and Chronic Pain (Myofascial Pain and Joint Pain since 1974-5) that everyone in the CPP department was fully aware of. As a result of adverse employment actions, her medical conditions worsened and Dr. Majid was required to take multiple medical leaves.

63. Dr. Majid's diabetes creates sugar spikes and then lows which result in her feeling shaky and tired and takes several hours to recover from. Dr. Majid's medical records show that from the time Dr. Beaver's hours and workload were decreased (resulting in her workload being increased), Dr. Majid's average blood glucose levels (Hemoglobin A1C) worsened, viewed by her physicians as strongly related to her stressful work environment.

64. Most notably, the impact of work stress on Dr. Majid's Type 1 diabetes created the necessity for her to start on an external insulin pump and continuous glucose monitoring device in July 2018. To meet the added demands of the department, she stayed longer at work, resulting in sleep

Costanzo Law Firm, APC
111 W. St. John Street #700
San Jose, CA 95113

deprivation which led to increased blood glucose levels the next day resulting in the inability to keep up with her work.

65. At one point, Dr. Majid collapsed in front of the office medical assistant, Sonya Borchers, from being so overworked. Ms. Beebe and the in-office clinician, Dr. Vittal Kandula, were called in and, after becoming aware of the situation, directed Dr. Majid to go home after she became medically stabilized.

66. In addition to the health complications from being overworked associated with her diabetes, Dr. Majid also noticed an increase in chronic migraines and chronic pain. Kaiser knew about Dr. Majid's chronic pain, as she has been forthcoming with all of her supervisors, physician colleagues and staff. Yet, not one of them ever engaged with in the interactive process with Dr. Majid.

67. Dr. Majid was never told by anyone in management that she was eligible to receive reasonable accommodations. Dr. Majid would have greatly benefitted from an automated ergonomic desk and a full hour lunch break, as well as other reasonable accommodations she qualified for but did not know she had any of these options.

68. After an ergonomic desk was recommended by the safety standards department evaluation, she was provided a used, hand-crank desk, while others in the department received push-button automatic ergonomic desks. When Dr. Majid protested, she was told the desks would not serve her due to her short stature.

69. When Dr. Majid presented Ms. Beebe with the make and model of an automatic desk that would fit her properly, and one that was previously purchased for one of her colleagues, Ms. Beebe refused to order the desk.

70. Furthermore, not only did management fail to engage in any discussions about accommodating Dr. Majid to help alleviate symptoms from her chronic pain, Kaiser denied Dr. Majid, in writing, eligibility to take leave under FMLA. Although Kaiser informed Dr. Majid of her eligibility to take leave under the FMLA which began as far back as August 16, 2010 and continued through to the present, many of her requests were subsequently denied.

71. Recently, Dr. Majid has been diagnosed with additional medical conditions resulting from her diabetes not being under control. This is correlated with her blood sugar being higher during her employment with Defendant - the damage has been done and cannot be reversed.

**D. Dr. Majid is Discriminated Against Because of her Religion.**

72. As a devout Muslim woman, Dr. Majid requested a schedule change to allow her to leave early on Fridays in order to attend Salaat-ul-Jumu'ah, Friday prayer. She did this every week until she became so overburdened with work that she could no longer attend. She complained multiple times to management, yet she was denied assistance and continued to be unable to attend Friday prayer as she had originally been promised.

**E. Dr. Majid was Wrongfully Terminated.**

73. In October 2018, an investigation was launched into allegations that Dr. Majid had incomplete and/or missing documentation in patients' medical records. A meeting was held between Dr. Majid, her union representative Beja Alisheva, Traci Beebe, Laura Lloyd from HR, a compliance officer and Dr. John Guzman regarding the investigation. Dr. Majid was accused of fraud, her psychology license was threatened, and she was told she could face jail time. As an employee who continuously strived to perform her best for Kaiser, this was shocking and overwhelming.

74. The only reason she occasionally struggled with documentation was because she was severely overworked, stressed and was refused accommodations. She was essentially performing the job of two psychologists and was doing her best to keep up with the unrealistic expectations of her superiors.

75. In the investigation's Fact Finding Meeting, Dr. Majid was asked whether she had ever specifically informed Ms. Beebe of her struggles to keep up with transferring clinical documentation to the Electronic Charting System. Her response was that she had repeatedly told Ms. Beebe that she was struggling to keep up with the work. Repeatedly, Dr. Majid was dismissed. In fact, Dr. Majid cited a number of occasions where she spoke up about how overwhelmed she was, and no help followed. One such occasion was in 2016 when she had fallen behind on her documentation after one to two years of Dr. Beaver being allowed to be absent every other Friday in the 2-week pay period. Dr. Majid met with her managers as well as a Union Representative in order to discuss systems to support her in catching up. Unfortunately, there was no formal action and no safeguards were established to prevent her from falling behind again.

76. Dr. Majid was warned by a colleague who quit working at Kaiser after being pressured to prescribe pain medication at high doses against her best clinical judgment. Her colleague warned that "[Kaiser] will make it look like your fault when it's not." This is the exact situation Dr. Majid was subjected to. She was overworked and requests for assistance were ignored. When repercussions occurred as a result of being overworked, blame was placed solely on Dr. Majid.

77. On November 20, 2018, Dr. Majid was presented a letter of termination during a meeting with her union representative Beja Alisheva, department chief, Dr. Patel, office manager, Ms. Beebe,

and HR representative, Laura Lloyd. Dr. Majid filed multiple grievances appealing her termination and requested to be reinstated. All of these grievances were ultimately denied.

**F. Defamatory Statements Made Against Dr. Majid.**

78. Traci Beebe, an employee of Kaiser, made defamatory statements about Dr. Majid. She falsely informed receptionists, Connie, Sonya and Ann that the reason patients were inquiring as to where Dr. Majid was following her termination was that Dr. Majid had contacted patients outside of the therapeutic setting, which is against the law and in violation of code of conduct of psychologists. She further claimed she thought she heard Dr. Majid admit to doing so, however, Dr. Majid never had contact with any patients outside of the therapeutic setting on the Kaiser San Jose campus. This falsehood was reported by Sonya the same day it occurred and brought to the attention of the HR Director by Dr. Majid's union representative Beja Ailisheva.

79. Loretta Regan, an employee of Kaiser, also made defamatory statements about Dr. Majid. She falsely accused Dr. Majid of trying to cheat Kaiser and threatened to revoke vacation time she had already approved, despite having no evidence to support these allegations. She even went as far as to fabricate a story and file a complaint against Dr. Majid to tarnish her reputation, increase her stress levels, and attempt to remove her from the department.

**G. Dr. Majid Suffered, and Continues to Suffer, from Mental Anguish from the Traumatic Experiences She had at Kaiser**

80. Dr. Majid suffered significant emotional distress from being targeted and overworked by management. She had a wretched experience while working for Kaiser that has left lasting mental scars and medical problems. Dr. Majid was targeted, singled-out and falsely accused of improprieties such as lying and fraud. Dr. Majid has suffered lasting trauma from these experiences.

81. On one occasion, after her termination, she had to take her ill father, who is a retired physician, to the building she used to work in. Just standing in her old Kaiser building made Dr. Majid tremble and become emotional. This visceral reaction indicates the impact of the abuse she suffered while working for Kaiser.

## FIRST CAUSE OF ACTION
### RACE AND NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF GOV'T CODE §-12940(a).
#### Against Defendants Kaiser Permanente San Jose Medical Center and Permanente Medical Group Inc.

Plaintiff re-alleges and incorporates by reference, each and every allegation contained above, inclusive, as though fully set forth herein.

82. At all times relevant to this Complaint, CA Gov't Code §12900 et seq. and its implementing regulations was in full force and effect.

83. Pursuant to CA Gov't Code §12940(a) it is unlawful for an employer to discriminate against an employee because of that employee's race and national origin.

84. Defendants discriminated against Plaintiff due to her race and national origin when Defendants forced Plaintiff to take on an exponentially higher workload than her Caucasian counterpart. Further, Defendants disciplined Plaintiff despite her performing this greater workload, as compared to her Caucasian counterpart who received no discipline.

85. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered damages including, but not limited to, loss of income and benefits, emotional distress, and other general damages.

86. The acts of Defendants as described herein were malicious, oppressive, fraudulent, despicable, with an improver and evil motive amounting to malice and in conscience disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages against Defendants, and each of them, in an amount according to proof.

87. As a proximate result of the wrongful acts of Defendants, Plaintiff was forced to hire attorneys to prosecute her claims herein, and has incurred and is expected to continue to incur attorney fees and costs in connection therewith. Plaintiff is entitled to recover attorney fees and costs under CA Gov't Code §12965(b).

1  **WHEREFORE**, Plaintiff prays for relief as set forth below.

2  **SECOND CAUSE OF ACTION**
3  **GENDER DISCRIMINATION IN**
   **VIOLATION OF GOV'T CODE §-12940(a).**
4  **Against Defendants Kaiser Permanente San Jose Medical Center and**
5  **Permanente Medical Group Inc.**

6      Plaintiff re-alleges and incorporates by reference, each and every allegation contained
7  above, inclusive, as though fully set forth herein.

8  88.     At all times relevant to this Complaint, CA Gov't Code §12900 et seq. and its implementing

9  regulations was in full force and effect.

10  89.     Pursuant to CA Gov't Code §12940(a) it is unlawful for an employer to discriminate against

11  an employee because of that employee's sex or gender.

12  90.     Defendants discriminated against Plaintiff due to her gender when Defendants treated her

13  differently than her male counterparts. Plaintiff was given an unrealistic workload and reprimanded

14  when she fell short of those unrealistic expectations. On the other hand, her male counterpart, Dr.

15  Beavers, was given a relaxed schedule with minimal responsibilities. Plaintiff was expected to do

16  two jobs on one person's salary due to Dr. Patel's favoritism towards male employees.

17  91.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered

18  damages including, but not limited to, loss of income and benefits, emotional distress, and other

19  general damages.

20  92.     The acts of Defendant as described herein were malicious, oppressive, fraudulent,

21  despicable, with an improver and evil motive amounting to malice and in conscience disregard of

22  Plaintiff's rights, entitling Plaintiff to an award of punitive damages against Defendants, and each

23  of them, in an amount according to proof.

24  93.     As a proximate result of the wrongful acts of Defendants, Plaintiff was forced to hire

25  attorneys to prosecute her claims herein, and has incurred and is expected to continue to incur

26  attorney fees and costs in connection therewith. Plaintiff is entitled to recover attorney fees and

27  costs under CA Gov't Code §12965(b).

28  **WHEREFORE**, Plaintiff prays for relief as set forth below.

**THIRD CAUSE OF ACTION**
**DISABILITY DISCRIMINATION IN**
**VIOLATION OF GOV'T CODE §-12940(a).**
**Against Defendants Kaiser Permanente San Jose Medical Center and**
**Permanente Medical Group Inc.**

Plaintiff re-alleges and incorporates by reference, each and every allegation contained above, inclusive, as though fully set forth herein.

94.     At all times relevant to this Complaint, CA Gov't Code §12900 et seq. and its implementing regulations was in full force and effect.

95.     Pursuant to CA Gov't Code §12940(a) it is unlawful for an employer to discriminate against an employee because of that employee's physical and/or mental disability.

96.     Plaintiff has Type I Diabetes, migraines and chronic pain. Pursuant to Government Code §12926(m), Plaintiff's medical conditions qualifies as a physical disability.  In addition, the Defendants regarded or treated Plaintiff as though she had a disability as defined by these sections.

97.     Defendants discriminated against Plaintiff due to her disabilities when Defendant forced Plaintiff to take on extra work requiring her to miss her scheduled lunch breaks, exacerbating her diabetic condition. Additionally, other employees were given push-button ergonomic sit/stand desks, whereas Dr. Majid was given a crank desk despite her specific requests.

98.     Furthermore, Plaintiff was denied FMLA leave despite her eligibility.

99.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered damages including, but not limited to, loss of income and benefits, emotional distress, and other general damages.

100.     The acts of Defendant as described herein were malicious, oppressive, fraudulent, despicable, with an improper and evil motive amounting to malice and in conscience disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages against Defendants, and each of them, in an amount according to proof.

101.     As a proximate result of the wrongful acts of Defendants, Plaintiff was forced to hire attorneys to prosecute her claims herein, and has incurred and is expected to continue to incur

attorney fees and costs in connection therewith. Plaintiff is entitled to recover attorney fees and costs under CA Gov't Code §12965(b).

**WHEREFORE**, Plaintiff prays for relief as set forth below.

### FOURTH CAUSE OF ACTION
### FAILURE TO ACCOMMODATE IN
### VIOLATION OF GOV'T CODE §12940(m)
### Against Defendants Kaiser Permanente San Jose Medical Center and
### Permanente Medical Group Inc.

Plaintiff re-alleges and incorporates herein by reference all previous allegations set forth in this Complaint as though fully set forth herein.

102.    At all times relevant to this Complaint, California Government Code §12900 et seq. and its implementing regulations was in full force and effect.

103.    Pursuant to Government Code §12940(m) it is unlawful for an employer to fail or refuse to provide a reasonable accommodation to an employee with a physical or mental disability.

104.    Pursuant to Government Code §12926(m), Plaintiff's medical condition qualifies as a physical disability.  In addition, the Defendants regarded or treated Plaintiff as though she had a disability as defined by these sections.

105.    At all times relevant to this Complaint, Plaintiff was qualified for, and could perform the essential functions of her position with the Defendants, with reasonable accommodation.

106.    Defendants failed to accommodate Plaintiff when it forced Plaintiff to take on extra work requiring her to miss her scheduled lunch breaks; allowed other employees to receive push-button ergonomic sit/stand desks, whereas Dr. Majid was given a crank desk despite her specific requests; and denied Plaintiff FMLA leave despite her eligibility.

107.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered damages including, but not limited to, a loss of income and benefits, and has further suffered emotional distress, and other general damages.

**WHEREFORE**, Plaintiff prays for relief as set forth below.

## FIFTH CAUSE OF ACTION
### FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS IN VIOLATION OF GOV'T CODE §12940(n)
### Against Defendants Kaiser Permanente San Jose Medical Center and Permanente Medical Group Inc.

Plaintiff re-alleges and incorporates herein by reference all previous allegations set forth in this Complaint as though fully set forth herein.

108.     At all times relevant to this Complaint, California Government Code §12900 et seq. and its implementing regulations was in full force and effect.

109.     Pursuant to Government Code §12940(n) it is unlawful for an employer to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition.

110.     Pursuant to Government Code §12926(m), Plaintiff's medical conditions all qualify as physical and mental disabilities.  In addition, the Defendants regarded or treated Plaintiff as though she had a disability as defined by these sections.

111.     At all times relevant to this Complaint, Plaintiff was qualified for, and could perform the essential functions of her position with the Defendants, with reasonable accommodation

112.     The Defendants violated Government Code §12940(n) by, among other things, failing to engage in a timely, good faith interactive process and failing to provide reasonable accommodations.  Defendants continuously refused to engage in the interactive process despite her requests for reasonable accommodations.

113.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered damages including, but not limited to, a loss of income and benefits, and has further suffered emotional distress, and other general damages.

**WHEREFORE**, Plaintiff prays for relief as set forth below.

//
//

## SIXTH CAUSE OF ACTION
### RELIGIOUS DISCRIMINATION IN
### VIOLATION OF GOV'T CODE §12940(a)
**Against Defendants Kaiser Permanente San Jose Medical Center and
Permanente Medical Group Inc.**

Plaintiff re-alleges and incorporates by reference, each and every allegation contained above, inclusive, as though fully set forth herein.

114.    At all times relevant to this Complaint, CA Gov't Code §12900 et seq. and its implementing regulations was in full force and effect.

115.    Pursuant to CA Gov't Code §12940(a) it is unlawful for an employer to discriminate against an employee because of that employee's religious beliefs.

116.    Defendants discriminated against Plaintiff because of her religious beliefs and observances when Defendant overloaded Plaintiff with work, knowing that Plaintiff's religious beliefs prevented her from laboring during certain religious observances. Further, Defendant disciplined Plaintiff for her absences while she attended religious observances.

117.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered damages including, but not limited to, loss of income and benefits, emotional distress, and other general damages.

118.    The acts of Defendant as described herein were malicious, oppressive, fraudulent, despicable, with an improver and evil motive amounting to malice and in conscience disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages against Defendants, and each of them, in an amount according to proof.

119.    As a proximate result of the wrongful acts of Defendants, Plaintiff was forced to hire attorneys to prosecute her claims herein, and has incurred and is expected to continue to incur attorney fees and costs in connection therewith. Plaintiff is entitled to recover attorney fees and costs under CA Gov't Code §12965(b).

**WHEREFORE**, Plaintiff prays for relief as set forth below.

## SEVENTH CAUSE OF ACTION
### FAILURE TO ACCOMMODATE IN VIOLATION OF GOV'T CODE §12940(l)
**Against Defendants Kaiser Permanente San Jose Medical Center and
Permanente Medical Group Inc.**

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET #700
SAN JOSE, CA 95113

Plaintiff re-alleges and incorporates herein by reference all previous allegations set forth in this Complaint as though fully set forth herein.

120.    At all times relevant to this Complaint, California Government Code §12900 et seq. and its implementing regulations was in full force and effect.

121.    Pursuant to CA Gov't Code § 12940(l), requires an employer to accommodate an employee's religious belief or observance when in conflict with an employment requirement, unless the employer demonstrates it has explored any available reasonable alternative accommodation for the employee's religious beliefs or observance.

122.    As a devout Muslim woman, Dr. Majid requested a schedule change to allow her to leave early on Fridays in order to attend Salaat-ul-Jumu'ah, Friday prayer. She complained multiple times to management that she was too overburdened with work to attend Friday prayer, yet she was denied assistance and continued to be unable to attend Friday prayer as she was promised.

123.    At all times relevant to this Complaint, Plaintiff was qualified for, and could perform the essential functions of her position with the Defendants, with reasonable accommodation.

124.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered damages including, but not limited to, a loss of income and benefits, and has further suffered emotional distress, and other general damages.

**WHEREFORE**, Plaintiff prays for relief as set forth below.

**EIGHTH CAUSE OF ACTION**
**RETALIATION IN VIOLATION OF GOV'T CODE §12940(h)**
**Against Defendants Kaiser Permanente San Jose Medical Center and**
**Permanente Medical Group Inc.**

Plaintiffs re-allege and incorporate herein by reference all previous allegations set forth in this Complaint.

125.    At all times mentioned herein, California Government Code §12940 et seq. was in full force and effect and was binding upon Defendants and each of its employees.

126.    Defendants retaliated against Plaintiff by creating an overloaded work schedule that forced Plaintiff to work during Plaintiff's religious observances, which were known to Defendants.

Plaintiff was retaliated against for complaining to her superiors about her unethical working conditions by treating her worse than her male and/or Caucasian counterparts.

127. Defendants are directly liable for the discriminatory conduct of their owners, managers, directors, supervisors and other employees and agents.

128. As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has suffered damages including, but not limited to, a loss of income and benefits, and has further suffered emotional distress, and other general and special damages.

129. The acts of Defendant as described herein were malicious, oppressive, fraudulent, despicable, with an improver and evil motive amounting to malice and in conscience disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages against Defendants, and each of them, in an amount according to proof.

130. As a proximate result of the wrongful acts of Defendants, Plaintiff has been forced to hire attorneys to prosecute her claims herein and has incurred and is expected to continue to incur attorney fees and costs in connection therewith. Plaintiff is entitled to recover attorney fees and costs under CA Gov't Code §12965(b).

**WHEREFORE**, Plaintiff prays for relief as set forth below.

<u>**NINTH CAUSE OF ACTION**</u>
**FAILURE TO TAKE STEPS TO PREVENT DISCRIMINATION**
**IN VIOLATION OF GOV'T CODE §12940(k)**
**Against Defendants Kaiser Permanente San Jose Medical Center and**
**Permanente Medical Group Inc.**

Plaintiffs re-allege and incorporate herein by reference all previous allegations set forth in this Complaint.

131. At all times relevant to this Complaint, CA Gov't Code §12900 et seq. and its implementing regulations was in full force and effect.

132. CA Gov't Code § 12940(k) provides that it is unlawful for any employer or covered entity to fail to take all reasonable steps necessary to prevent discrimination from occurring.

133. At all times relevant hereto, Defendants were aware of Plaintiff's religious beliefs, physical disabilities, and need for reasonable accommodation.

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET #700
SAN JOSE, CA 95113

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET #700
SAN JOSE, CA 95113

134. Defendants failed to take all reasonable steps necessary to prevent discrimination on the basis of religious creed, race, national origin, and disability from occurring.

135. In committing these actions, Defendants violated the Fair Employment and Housing Act.

136. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered damages including, but not limited to, loss of income and benefits, and emotional distress, and other general damages.

137. The acts of Defendant as described herein were malicious, oppressive, fraudulent, despicable, with an improver and evil motive amounting to malice and in conscience disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages against Defendants, and each of them, in an amount according to proof.

138. As a proximate result of the wrongful acts of Defendants, Plaintiff has been forced to hire attorneys to prosecute her claims herein and has incurred and is expected to continue to incur attorney fees and costs in connection therewith. Plaintiff is entitled to recover attorney fees and costs under CA Gov't Code §12965(b).

WHEREFORE, Plaintiffs pray for relief as set forth below.

### TENTH CAUSE OF ACTION
**WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY (FEHA)**
**Against Defendants Kaiser Permanente San Jose Medical Center and**
**Permanente Medical Group Inc.**

Plaintiff re-alleges and incorporates herein by reference all previous allegations set forth in this Complaint as though fully set forth herein.

139. At all times mentioned, the public policy of the State of California, as codified and expressed and mandated in Cal. Gov't Code §12940 et seq., is to prohibit employers from harassing or discriminating against any employee on the basis of protected class affiliation. This public policy of the State of California is designed to protect all employees and to promote the welfare and wellbeing of the community at large.

140.     Accordingly, the actions of Defendants in discharging Plaintiff were wrongful and in contravention of the express public policy of the State of California, to wit: The policy set forth in Gov't Code §12940 et seq. and the laws and regulations promulgated thereunder.

141.     By reason of the conduct of Defendants, Plaintiff has necessarily had to retain attorneys to prosecute the within action. Plaintiff, therefore, is entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs incurred in bringing the within action. As a result of Defendants' actions, Plaintiff has suffered emotional distress, resulting in damages according to proof.

142.     The conduct of Defendants and/or their agents/employees as described herein was malicious and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of Defendants' actions. Defendants and their agents/employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining employees and agents. Consequently, Plaintiff is entitled to punitive damages against Defendants according to proof.

143.     Defendants are directly liable for the conduct of its owners, managers, directors, supervisors, and other employees and agents.

**WHEREFORE,** Plaintiff prays for judgment as set forth below.

## ELEVENTH CAUSE OF ACTION

### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

**Against Defendants Kaiser Permanente San Jose Medical Center and
Permanente Medical Group Inc.**

Plaintiff re-alleges and incorporates by reference, each and every allegation contained above, inclusive, as though fully set forth herein.

144.     Plaintiff and Kaiser entered into a contract for employment.

145.     Plaintiff and Defendants had mutual obligations under Plaintiff's employment contract.

146.     Plaintiff performed all conditions, covenants and promises required consistent with a course of conduct or as a result of usage of trade or personal understanding between Plaintiff and Defendants, as well as complying with and performing all conditions consistent with his written

employment agreement with Kaiser. Defendants voluntarily accepted Plaintiff's performance in accordance with the terms and conditions of both parties' written employment contract.

147. Plaintiff was harmed by Defendants' conduct.

148. By reason of the conduct of Defendants, Plaintiff has necessarily had to retain attorneys to prosecute the within action. Plaintiff therefore is entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs incurred in bringing the within action. As a result of Defendants' actions, Plaintiff has sustained economic damages to be proven at trial. As a further result of Defendants' actions, Plaintiff has suffered emotional distress, resulting in damages according to proof.

149. The conduct of Defendant and/or their agents/employees as described herein, was malicious, and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of Defendant's actions. Defendant and their agents/employees or supervisors authorized, condoned, and ratified the unlawful conduct of the remaining employees and agents. Consequently, Plaintiff is entitled to punitive damages against Defendant according to proof.

150. Defendant is directly liable for the conduct of its owners, managers, directors, supervisors, and other employees and agents.

**WHEREFORE**, Plaintiff prays for judgment as set forth below.

## TWELFTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
#### Against Defendants Kaiser Permanente San Jose Medical Center and
#### Permanente Medical Group Inc.

Plaintiff re-alleges and incorporates by reference, each and every allegation contained above, inclusive, as though fully set forth herein.

151. Defendant engaged in outrageous conduct toward Plaintiff, with the intent to cause or with reckless disregard for the probability of causing Plaintiff to suffer severe emotional distress. To the extent that said outrageous conduct was perpetrated by certain employees and agents, the remaining employees and agents adopted and ratified said conduct with a wanton and reckless disregard of the deleterious consequences to Plaintiff.

152. At all relevant times, Defendant had the power, ability, authority, and duty to stop engaging in the conduct described herein and/or to intervene to prevent or prohibit said conduct.

153. Defendant is directly liable for the conduct of their owners, managers, directors, supervisors and other employees and agents.

154. As a proximate result of said conduct, Plaintiff has suffered and continues to suffer extreme mental distress, humiliation, anguish, and emotional and physical injuries, as well as economic losses, all to her damage in amounts according to proof.

155. The acts of Defendant as described herein were malicious, oppressive, fraudulent, despicable, with an improper and evil motive amounting to malice and in conscience disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages against Defendants, and each of them, in an amount according to proof.

156. Defendant is directly liable for the conduct of its owners, managers, directors, supervisors and other employees and agents.

**WHEREFORE**, Plaintiff prayers for relief as set forth below.

**THIRTEENTH CAUSE OF ACTION**
**DEFAMATION PER QUOD**
**Against Defendants**
**Traci Beebe and Loretta Regan**

Plaintiff re-alleges and incorporates herein by reference all previous allegations set forth in this Complaint.

157. California Civil Code Section 45a provides, "A libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its face. Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that he has suffered special damage as a proximate result thereof."

158. At all relevant times, Ms. Beebe, an employee of Kaiser, made defamatory statements about Plaintiff. She falsely informed receptionists, Connie, Sonya and Ann that the reason patients were inquiring as to where Dr. Majid was following her termination was that Dr. Majid had contacted patients outside of the therapeutic setting, which is against the law and in violation of

code of conduct of psychologists. She further claimed she thought she heard Dr. Majid admit to doing so, however, Dr. Majid never had contact with any patients outside of the therapeutic setting on the Kaiser San Jose campus. This falsehood was reported by Sonya the same day it occurred and brought to the attention of the HR Director by Dr. Majid's union representative Beja Ailisheva.

159. At all relevant times, Ms. Regan, an employee of Kaiser, made defamatory statements about Plaintiff. She falsely accused Dr. Majid of trying to cheat Kaiser and threatened to revoke vacation time she had already approved, despite having no evidence to support these allegations. She even went as far as to fabricate a story and file a complaint against Dr. Majid to tarnish her reputation, increase her stress levels, and attempt to remove her from the department.

160. Because of the facts and circumstances known to Defendants of the statements, Defendants intended to injure Plaintiff and expose her to hatred, contempt, ridicule or shame.

161. Defendants failed to use reasonable care to determine the truth or falsity of the statements.

162. Such statements were a substantial factor in causing Plaintiff harm.

163. Defendants failed to act or to stop engaging in the conduct described herein and/or to prevent or prohibit such conduct or otherwise protect Plaintiff. To the extent that said negligent conduct was perpetrated by certain employees and agents, the remaining employees and agents confirmed and ratified said conduct with the knowledge that Plaintiff's emotional and physical distress would thereby increase, and with wanton and reckless disregard for the deleterious consequences to Plaintiff.

164. Defendants are directly liable for the conduct of their owners, managers, directors, supervisors and other employees and agents.

165. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer serious emotional distress, humiliation, anguish, emotional and physical injuries, as well as economic losses, all to his damage in amounts according to proof.

**WHEREFORE**, Plaintiff prays for judgment as set forth below.

## PRAYER FOR RELIEF

**WHEREFORE**, Dr. Majid seeks relief from this Court in the following respects:

1. For penalties, special and general damages according to proof;

2. For a permanent injunction prohibiting Defendants from engaging in violation of relevant provisions of the California Government Code, including the Fair Employment and Housing Act, and the California Civil Code;

3. For declaratory relief to declare Defendants' conduct to be in violation of Plaintiff's rights;

4. For punitive damages as allowed by law;

5. For mental and emotional distress damages;

6. For all unpaid wages, including statutory penalties, according to proof;

7. For all damages, including but not limited to, retirement benefits, according to proof;

8. For costs of suit incurred herein;

9. For attorneys' fees on causes of action where fees are available by law, including under the Fair Employment and Housing Act;

10. For prejudgment and post-judgment interest as available by law; and

11. For such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all causes of action alleged herein in the Complaint for Damages.

Dated: September 18, 2020

Respectfully submitted,

*Lori J. Costanzo*

Lori Costanzo
Attorney for Plaintiff,
Sarah Majid, PsyD

# EXHIBIT A



**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

November 13, 2019

Andrea Justo
111 W. St. John Street, Suite 700, 700
San Jose, California 95113

RE:   **Notice to Complainant's Attorney**
      DFEH Matter Number: 201911-08274913
      Right to Sue: Majid / The Permanente Medical Group et al.

Dear Andrea Justo:

Attached is a copy of your complaint of discrimination filed with the Department of Fair
Employment and Housing (DFEH) pursuant to the California Fair Employment and
Housing Act, Government Code section 12900 et seq. Also attached is a copy of your
Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents. Please refer to the attached Notice of Case Closure and Right to Sue for
information regarding filing a private lawsuit in the State of California. A courtesy "Notice
of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,


Department of Fair Employment and Housing



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov



GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

November 13, 2019

RE: **Notice of Filing of Discrimination Complaint**
DFEH Matter Number: 201911-08274913
Right to Sue: Majid / The Permanente Medical Group et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Department of Fair Employment and Housing (DFEH) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. This case is not being investigated by DFEH and is being closed immediately. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to DFEH is requested or required.

Sincerely,


Department of Fair Employment and Housing



**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

November 13, 2019

Sarah Majid
2981 Calle de Las Flores
San Jose, California 95148

RE:  **Notice of Case Closure and Right to Sue**
DFEH Matter Number: 201911-08274913
Right to Sue: Majid / The Permanente Medical Group et al.

Dear Sarah Majid,

This letter informs you that the above-referenced complaint was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective November 13, 2019 because an immediate Right to Sue notice was requested. DFEH will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,


Department of Fair Employment and Housing

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**
**DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Sarah Majid

DFEH No. 201911-08274913

Complainant,

vs.

The Permanente Medical Group
1950 Franklin Street, 18th Floor
Oakland, California 94612

Kaiser Permanente San Jose Medical Center
275 Hospital Parkway
San Jose, California 95119

Laura Lloyd
275 Hospital Parkway, Building 6, Suite 700
San Jose, California 95119

Traci Beebe
275 Hospital Parkway
San Jose, California 95119

Respondents

_____

1. Respondent **The Permanente Medical Group** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

2. Complainant **Sarah Majid**, resides in the City of **San Jose** State of **California.**

3. Complainant alleges that on or about **November 20, 2018**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's race, national origin (includes language restrictions), color, religious creed - includes dress and grooming

-1-

Date Filed: November 13, 2019

practices, sex/gender, family care or medical leave (cfra) (employers of 50 or more people).

**Complainant was discriminated against** because of complainant's race, national origin (includes language restrictions), color, religious creed - includes dress and grooming practices, sex/gender, family care or medical leave (cfra) (employers of 50 or more people) and as a result of the discrimination was terminated, denied hire or promotion, reprimanded, denied equal pay, denied any employment benefit or privilege, denied reasonable accommodation for a disability, denied family care or medical leave (cfra) (employers of 50 or more people), denied accommodation for religious beliefs, denied work opportunities or assignments.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, requested or used a disability-related accommodation, requested or used a religious accommodation, requested or used leave under the california family rights act or fmla (employers of 50 or more people) and as a result was terminated, denied hire or promotion, reprimanded, denied equal pay, denied any employment benefit or privilege, denied reasonable accommodation for a disability, denied family care or medical leave (cfra) (employers of 50 or more people), denied accommodation for religious beliefs.

**Additional Complaint Details:** Dr. Sarah Majid received her PsyD in Clinical Psychology from the California School of Professional Psychology. Dr. Majid began employment at Kaiser as a behavioral medicine specialist in 2006 and was the model employee. Dr. Majid received performance evaluations of either "meets" or "exceeds" standards overall from 2010 to 2017 and positive competency assessments with a "fully effective" overall score from 2007 through 2009. In Dr. Majid's 2017 performance evaluation, her manager, Traci Beebe, wrote "[Dr. Majid's] consistent, superior technical knowledge and skills are key to her excellent performance" and "[Dr. Majid] can be counted on to maintain a high standard of accuracy and completeness when writing/editing, documenting, and/or transcribing required information." Additionally, Dr. Majid received 100% on Core Review Question Packet in 2007 through 2011, which contains information all Support Staff at Kaiser should know and review on an annual basis.

While employed at Kaiser, Dr. Majid's department was severely understaffed. Dr. Majid was often the only psychologist in the department. Dr. Majid worked with another psychologist, Dr. Richard Beaver, during her employment with Kaiser from February 2007 to 2018. Dr. Beaver is a Caucasian male and told Dr. Majid that he was not going to work more than he had to and was only there for the money and not for the betterment of the patients or for the department which were the primary goals of Dr. Majid. In fact, at the time of Dr. Majid's recruitment into the department,

Dr. Michelle Wolf-Bloom, PhD informed Dr. Majid that both herself and Dr. James Moran, PhD (the psychologists working in the chronic pain program department) attempted to dissuade his hire to the department chief, Dr. Darshan Patel, due to his apparent lack of incentive to contribute to the advancement of the department. Dr. Wolf-Bloom told Dr. Majid she believed Dr. Patel was influenced by Dr. Beaver's gender and his presentation style.

Dr. Beaver was minimally involved in the creation of the Level 2+ 10-week patient training program, leaving Dr. Majid to create the program during work hours in addition to taking work home to complete the project by the expected deadline established by Dr. Patel. In 2014, Dr. Beaver was formally given permission to change his schedule from 40 hours/week to 36 hours/week, then 44 hours/week per 2 week pay period, which required Dr. Majid to teach additional classes. In 2015, Dr. Beaver was given permission by Dr. Patel and manager Traci Beebe to only work three (3) days a week yet was still classified as a full-time employee until her termination, leaving Dr. Majid to handle the bulk of the caseload and be the point person for all staff, doctors and patients, on a virtual 24/7 basis. Dr. Majid was forced to work nine and a half (9.5) hours, Monday through Thursday, respectively, and five (5) hours on Fridays. She only took a thirty (30) minute, unpaid lunch breaks each day. Dr. Majid's schedule was constantly being added to with patient appointments that often resulted in her missing lunch – which was detrimental to her diabetic condition. Whereas, Dr. Beaver's schedule was rarely altered and when it was altered by management to increase patient access, Dr. Beaver changed it back to its previous format including a 30-minute office time following the 30-minute lunch break which was used as an hour lunch.

At no time was Dr. Beaver chastised for his actions. During the final year of Dr. Beaver's time in the department, his participation in the program decreased significantly with even the front staff, including Connie Juarez MA, discussing with Dr. Beaver he was "already in retirement" and "not really in the department" to which he agreed.

When Dr. Heather Maratella, PsyD. began work in the department in September of 2019, Dr. Patel and Ms. Beebe approved of Dr. Maratella's schedule to have far fewer patients and with each appointment to be followed by time to complete chartwork. In addition, Dr. Maratella was able to stop assessing patients for whom English is a second language. The patient informed consent forms were solely in English, which created an ethical dilemma when a non-English speaking patient were expected to sign a document he/she did not understand. This was an issue Dr. Majid raised with Dr. Patel at the time of her entry into the chronic pain program department in 2007 and repeatedly thereafter with each office manager, requesting the consent forms to be translated into the most spoken languages represented in the South San Francisco Bay area (including Spanish, Tagalog, Mandarin, Hindi). She was told repeatedly that Kaiser Permanente provided care to all without

discrimination and each patient would have to either bring an English speaking person with them to the appointment in order to complete the necessary forms of consent and mood assessment or the office's nurse would review the material with the patient prior to seeing the psychologists.  This rarely occurred, leaving Dr. Majid to have to use the evaluation time to review forms with the patient using the language translation assistance line utilized by Kaiser Permanente System which extended the appointment time, later requiring overtime to complete charting.

Furthermore, Dr. Maratella was able to refrain from teaching one of the three 10-week, 2.5 to 3.5 hour classes, stop leading the two (2) Chronic Pain Program Booster classes, and decrease her participation in the Understanding Chronic Pain Introduction to Chronic Pain Program class taught weekly to perspective patients referred to the program.  In addition to being expected to maintain a full load of patients with far fewer charting times in her schedule, Dr. Majid was also expected to teach all of the classes listed above that Dr. Maratella was excused from teaching. Dr. Majid was expected to do this even when Dr. Beaver was away from the office during 2-4 week vacations in the guise to maintain patient access into the department.

As the only female of Indian heritage, Dr. Majid's concerns were ignored and her motivation to work for the betterment of the department was abused. Dr. Majid's requests for additional help with both the workload and the workflow of the department, discussed below, were in an attempt to maintain the high level of standards for patient care of which she is accustomed.  The department's failure to make the changes she requested during her time with Kaiser, but then to enact those same requests within the four (4) months after the start date of the newly hired white psychologist speaks volumes.

As this working arrangement began to take a toll on her health, Dr. Majid complained to her supervisors and co-workers that she cannot manage the entire department on her own; but the issue was never addressed nor was it alleviated. Specifically, on numerous occasions, Dr. Majid expressed to her clinical supervisor, Dr. John Guzman, that the workload was unevenly distributed between herself and Dr. Beaver and that she was handling the majority of it.  Dr. Guzman's response was to redirect Dr. Majid to speak with an office manager and offered her zero support.

Dr. Majid did what Dr. Guzman said and she went to her office manager for assistance.  Dr. Majid spoke with CPP office manager, Traci Beebe, who coerced Dr. Majid into thinking that she was on her side with statements such as "what we say now is just between you and me, consider this Vegas" (referring to the famous saying, "what happens in Vegas, stays in Vegas").  Dr. Majid and Ms. Beebe had multiple conversations about the disparity in workload and the unrealistic expectation to see additional patients when Dr. Majid's schedule was already full. Rather than

*Complaint – DFEH No. 201911-08274913*

Date Filed: November 13, 2019

helping Dr. Majid, Ms. Beebe simply told her that all staff needed to work harder. Ms. Beebe told Dr. Majid that she would encourage the department chief, Dr. Darshan to hire additional help. However, this proved to be a lie since Dr. Beaver is listed as a full-time employee (even though he was only working part-time), there appeared to be no need to hire a new psychologist.

Dr. Majid met with her union representative, Sam Page, in 2014 when she was struggling to keep up with this heavy workload after Dr. Beaver changed his weekly schedule to reduce his hours every other week. Ms. Page arranged a meeting between Dr. Majid, Ms. Beebe and Dr. Guzman to discuss methods of helping Dr. Majid. Ms. Beebe and Dr. Guzman agreed to meet with Dr. Majid on a regular basis to ensure she no longer had an unrealistically large workload. However, these meetings never occurred. Dr. Majid told Ms. Beebe on multiple occasions and in front of witnesses, such as clinic nurses Angela Wright, Valerie Heglar and Anne Gillick, that she was "drowning" under the workload and that Ms. Beebe was expecting "blood from a stone." Furthermore, Dr. Majid told Ms. Beebe and Dr. Patel, individually and in monthly full staff department meetings, that she could not keep up with the workload after Dr. Beaver reduced his hours by fourteen (14) hours a week and that she needed help.

Dr. Patel and Ms. Beebe's were clearly aware of the strain Dr. Majid was under and were equally perplexed as to why Dr. Beaver was still employed when he is contributing so little. This is evidenced by the multiple conversations where Dr. Patel and Ms. Beebe separately expressed to Dr. Majid that Dr. Beaver had already emotionally and psychologically retired and was doing far less work than was necessary for the department. They both also recognized that speaking to Dr. Beaver regarding patient care and office concerns was futile as he was no longer interested in treating patients or advancing the betterment of the department. Dr. Patel and Ms. Beebe's solution was to turn to Dr. Majid to make up the workload and then encouraged the rest of the department to do the same. Ms. Beebe even directed the support staff (medical assistants, program assistants, two nurses, two pharmacists, and physical therapists) to bring clinical and interpersonal staff issues to Dr. Majid to manage which hindered her ability to complete her daily workload.

These are just a few of a countless number of instances where Dr. Majid sought help from her superiors to ensure every patient received Kaiser's full attention while simultaneously maintaining her health and wellbeing. Dr. Majid was set up to fail. No other employee in her department was subjected to this extra workload and constant dismissal from management. The difference between Dr. Majid and her colleagues was that she is Indian and female, and that difference facilitated the adverse treatment against her.

*Complaint – DFEH No. 201911-08274913*

Date Filed: November 13, 2019

Dr. Majid's BMS department had weekly meetings and Dr. Guzman routinely excluded Dr. Majid from said meetings. Dr. Majid asked Dr. Guzman for years to have increased participation in the weekly meetings, but each of her requests were denied.

In addition to being excluded from her own team meetings, Dr. Majid was targeted by her CPP office manager, Kim Warhola. At the direction of the chief of the department, Dr. Patel, Ms. Warhola created a high stress environment for Dr. Majid by increasing the workload for both Dr. Majid and Dr. Beaver. However, because Dr. Beaver was disengaging from the work of the office, the increased workload intended for two people, fell solely on Dr. Majid. Ms. Warhola and all the other supervisors were aware of this uneven workload distribution.

Ms. Warhola also constantly chastised Dr. Majid for not being in the office at all times, even though Dr. Majid's contract states that her schedule can vary based on client meetings. On one occasion, Dr. Majid entered her own office in the morning to find Ms. Warhola sitting in the dark in her office chair waiting for Dr. Majid. Dr. Majid did not have any patients scheduled at that time and she arrived well before her next scheduled appointment. Ms. Warhola's behavior was meant to intimidate Dr. Majid. This inappropriate micromanagement was not done to any other psychologist.

Furthermore, Dr. Majid was also targeted by another CPP office manager, Loretta Regan. Although Ms. Regan created a stressful environment for all staff under her management during her short time with Kaiser, she targeted Dr. Majid in particular. For example, Ms. Regan approved vacation time for Dr. Majid, but then forgot that she approved the time off and demanded proof of her prior approval. Ms. Regan falsely accused Dr. Majid of attempting to cheat Kaiser and threatened to revoke the vacation time she already approved. Ms. Regan took this step further by filing a complaint against Dr. Majid. Ms. Regan fabricated a story and filed a complaint to tarnish Dr. Majid's reputation, increase her stress levels, and attempt to remove her from the department as she had to others under her management during her eleven (11) month tenure at the facility. In a meeting with Union Representative, Greg Tegencamp, Dr. Majid, Ms. Regan and Administrative Representative, Sue Colby, Mr. Tegencamp, was able to get the charge dismissed and prevented from being placed in her record due to lack of proof as well as the nature of motivation for the filing of the complaint.

Dr. Majid suffered significant emotional distress from being targeted and overworked by management. She had a wretched experience while working for Kaiser that has left lasting mental scars. Dr. Majid was targeted, singled-out and falsely accused of improprieties such as lying and fraud. Dr. Majid has suffered lasting trauma from these experiences. On one occasion, after her termination, she had to take her ill father to the building she used to work in. Just standing in her old building made Dr.

*Complaint – DFEH No. 201911-08274913*

Date Filed: November 13, 2019

Majid tremble and become emotional. This visceral reaction indicates the impact the abuse she suffered from working at Kaiser. This trauma has prevented her from seeking additional employment to this day.

Dr. Majid is a proud and devoted Muslim woman. As such, she requested a schedule change to allow her to leave early every Friday in order to attend Salaat-ul-Jumu'ah, Friday prayer. She was doing this every week until she became so overburdened with work that she was unable to attend these prayer sessions. Even though she complained multiple times to management, she was denied assistance and continued to be unable to attend Friday prayer as she was promised.

In October of 2018, an investigation was launched into allegations that Dr. Majid had incomplete and/or missing documentation in patients' medical records. This was an awful experience and contributed to the emotional distress she had already experienced. A meeting was held between Dr. Majid, her union representative Beja Alisheva, Traci Beebe, Laura Loyd from HR, a compliance officer and Dr. John Guzman regarding the investigation. Dr. Majid was accused of fraud, her psychology license was threatened, and she was told she could face jail time. As an employee who continuously strived to benefit Kaiser and to always do her best, this was a very traumatic experience for Dr. Majid.

The only reason that Dr. Majid occasionally struggled with documentation was because she was so severely overworked. Dr. Majid was essentially doing the job of two psychologists and she did her best to keep up with her unrealistically demanding workload. Dr. Majid was persistent about requesting additional help from management and that she was struggling to keep up with her schedule without additional assistance. Dr. Majid never received any additional help and was ultimately set up to fail.

Dr. Majid was warned by a colleague who quit working for Kaiser after being pressured to prescribe pain medication at high doses against her best clinical judgment. Her colleague warned her, "[Kaiser] will make it look like your fault when it's not." This is exactly what occurred here. Dr. Majid was overworked and her requests for assistance were ignored. When repercussions occurred as a result of being overworked, blame was placed solely on Dr. Majid.

On November 20, 2018 Dr. Majid was presented a letter of termination during a meeting with her union representative, Beja Alisheva, department chief, Dr. Patel, office manager, Ms. Beebe, and HR representative, Laura Lloyd. She filed multiple grievances appealing her termination and requested to be reinstated. All of Dr. Majid's grievances were ignored and ultimately denied.

Date Filed: November 13, 2019

VERIFICATION

I, **Andrea Justo**, am the **Attorney** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof.  The matters alleged are based on information and belief, which I believe to be true.

On November 13, 2019, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**San Jose, California**

Date Filed: November 13, 2019

# CIVIL LAWSUIT NOTICE

*Superior Court of California, County of Santa Clara*
*191 North First St., San José, CA  95113*

CASE NUMBER: _____

> ## PLEASE READ THIS ENTIRE FORM

**_PLAINTIFF_** (the person suing):  Within 60 days after filing the lawsuit, you must serve each Defendant with the *Complaint*, *Summons*, an *Alternative Dispute Resolution (ADR) Information Sheet*, and a copy of this *Civil Lawsuit Notice*, and you must file written proof of such service.

---

**_DEFENDANT_** (The person sued):  **You must do each of the following to protect your rights:**

1. You must file a **written response** to the *Complaint, using the proper legal form or format,* in the Clerk's Office of the Court, within **30 days** of the date you were served with the *Summons* and *Complaint*;
2. You must serve by mail  a copy of your written response on the  Plaintiff's attorney or on the Plaintiff if Plaintiff has no attorney (to "serve by mail" means to have an adult other than yourself mail a copy); and
3. You must attend the first Case Management Conference.

**Warning:  If you, as the Defendant, do not follow these instructions, you may automatically lose this case.**

---

**_RULES AND FORMS:_**  You must follow the California Rules of Court and the Superior Court of California, County of <_CountyName_> Local Civil Rules and use proper forms.  You can obtain legal information, view the rules and receive forms, free of charge, from the Self-Help Center at 201 North First Street, San José (408-882-2900 x-2926).

- State Rules and Judicial Council Forms:  www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms:  http://www.sccsuperiorcourt.org/civil/rule1toc.htm

**_CASE MANAGEMENT CONFERENCE (CMC):_**  You must meet with the other parties and discuss the case, in person or by telephone at least 30 calendar days before the CMC.  You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

> **You or your attorney must appear at the CMC.**  *You may ask to appear by telephone – see Local Civil Rule 8.*

---

Barrett, Thang N

**Your Case Management Judge is:** _____ **Department:** _____  21

**The 1st CMC is scheduled for:** (Completed by Clerk of Court)
**Date:** 1/26/2021 **Time:** 3:45 PM in **Department:** 21

**The next CMC is scheduled for:** (Completed by party if the 1st CMC was continued or has passed)
**Date:** _____ **Time:** _____ in **Department:** _____

---

**_ALTERNATIVE DISPUTE RESOLUTION (ADR):_**  If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

**_WARNING:_** Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

# SANTA CLARA COUNTY SUPERIOR COURT
# ALTERNATIVE DISPUTE RESOLUTION
# INFORMATION SHEET

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

### What is ADR?
ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

### What are the advantages of choosing ADR instead of litigation?
ADR can have a number of advantages over litigation:

- **ADR can save time.** A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

- **ADR can save money.** Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

- **ADR provides more participation.** Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

- **ADR provides more control and flexibility.** Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

- **ADR can reduce stress.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

### What are the main forms of ADR offered by the Court?
 **Mediation** is an informal, confidential, flexible and non-binding process in the mediator helps the parties to understand the interests of everyone involved, and their practical and legal choices. The mediator helps the parties to communicate better, explore legal and practical settlement options, and reach an acceptable solution of the problem. The mediator does not decide the solution to the dispute; the parties do.

Mediation may be appropriate when:
- The parties want a non-adversary procedure
- The parties have a continuing business or personal relationship
- Communication problems are interfering with a resolution
- There is an emotional element involved
- The parties are interested in an injunction, consent decree, or other form of equitable relief

**Neutral evaluation**, sometimes called "Early Neutral Evaluation" or "ENE", is an informal process in which the evaluator, an experienced neutral lawyer, hears a compact presentation of both sides of the case, gives a non-binding assessment of the strengths and weaknesses on each side, and predicts the likely outcome. The evaluator can help parties to identify issues, prepare stipulations, and draft discovery plans. The parties may use the neutral's evaluation to discuss settlement.

Neutral evaluation may be appropriate when:
- The parties are far apart in their view of the law or value of the case
- The case involves a technical issue in which the evaluator has expertise
- Case planning assistance would be helpful and would save legal fees and costs
- The parties are interested in an injunction, consent decree, or other form of equitable relief

*-over-*

**Arbitration** is a less formal process than a trial, with no jury. The arbitrator hears the evidence and arguments of the parties and then makes a written decision. The parties can agree to binding or non-binding arbitration. In binding arbitration, the arbitrator's decision is final and completely resolves the case, without the opportunity for appeal. In non-binding arbitration, the arbitrator's decision could resolve the case, without the opportunity for appeal, unless a party timely rejects the arbitrator's decision within 30 days and requests a trial. Private arbitrators are allowed to charge for their time.

Arbitration may be appropriate when:

- The action is for personal injury, property damage, or breach of contract
- Only monetary damages are sought
- Witness testimony, under oath, needs to be evaluated
- An advisory opinion is sought from an experienced litigator (if a non-binding arbitration)

**Civil Judge ADR** allows parties to have a mediation or settlement conference with an experienced judge of the Superior Court. Mediation is an informal, confidential, flexible and non-binding process in which the judge helps the parties to understand the interests of everyone involved, and their practical and legal choices. A settlement conference is an informal process in which the judge meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations. The request for mediation or settlement conference may be made promptly by stipulation (agreement) upon the filing of the Civil complaint and the answer. There is no charge for this service.

Civil Judge ADR may be appropriate when:

- The parties have complex facts to review
- The case involves multiple parties and problems
- The courthouse surroundings would he helpful to the settlement process

**Special masters and referees** are neutral parties who may be appointed by the court to obtain information or to make specific fact findings that may lead to a resolution of a dispute.
Special masters and referees can be particularly effective in complex cases with a number of parties, like construction disputes.

**Settlement conferences** are informal processes in which the neutral (a judge or an experienced attorney) meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations.
Settlement conferences can be effective when the authority or expertise of the judge or experienced attorney may help the parties reach a resolution.

*What kind of disputes can be resolved by ADR?*
Although some disputes must go to court, almost any dispute can be resolved through ADR. This includes disputes involving business matters; civil rights; collections; corporations; construction; consumer protection; contracts; copyrights; defamation; disabilities; discrimination; employment; environmental problems; fraud; harassment; health care; housing; insurance; intellectual property; labor; landlord/tenant; media; medical malpractice and other professional negligence; neighborhood problems; partnerships; patents; personal injury; probate; product liability; property damage; real estate; securities; sports; trade secret; and wrongful death, among other matters.

*Where can you get assistance with selecting an appropriate form of ADR and a neutral for your case, information about ADR procedures, or answers to other questions about ADR?*

*Contact:*

| | |
|---|---|
| Santa Clara County Superior Court | Santa Clara County DRPA Coordinator |
| ADR Administrator | 408-792-2784 |
| 408-882-2530 | |

**ALTERNATIVE DISPUTE RESOLUTION INFORMATION SHEET
CIVIL DIVISION**

# EXHIBIT B

1  Kathleen M. Hurly (State Bar No. 169907)
   Gabriel N. Rubin (State Bar No. 241659)
2  JACKSON LEWIS P.C.
   50 California Street, 9th Floor
3  San Francisco, California 94111-4615
   Telephone   (415) 394-9400
4  Facsimile:   (415) 394.9401
   E-mail:     Kathleen.Hurly@jacksonlewis.com
5  E-mail:     Gabriel.Rubin@jacksonlewis.com

6  Attorneys for Defendant
   THE PERMANENTE MEDICAL GROUP, INC.
7

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 12/1/2020 9:40 AM
Reviewed By: R. Tien
Case #20CV370951
Envelope: 5383181**

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                         COUNTY OF SANTA CLARA

10

11  SARAH MAJID, PsyD, an individual,        Case No. 20CV370951

12                Plaintiff,                 **DEFENDANT THE PERMANENTE
                                             MEDICAL GROUP, INC.'S ANSWER
13        v.                                 TO PLAINTIFF'S UNVERIFIED
                                             COMPLAINT**
14  KAISER PERMANENTE SAN JOSE
    MEDICAL CENTER; PERMANENTE
15  MEDICAL GROUP INC.; TRACI BEEBE,
    an individual; LORETTA REGAN, an
16  individual; and DOES 1-50, inclusive,
                                             Complaint Filed:   September 18, 2020
17                Defendants.                Trial Date:        None Set

18

19

20  TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

21        Defendant THE PERMANENTE MEDICAL GROUP INC. ("Defendant") hereby answers

22  the Unverified Complaint ("Complaint") of Plaintiff SARAH MAJID ("Plaintiff") as follows:

23                            **GENERAL DENIAL**

24        Pursuant to Code of Civil Procedure section 431.30(d), Defendant generally denies each

25  and every allegation of said unverified Complaint, and the whole thereof, and each and every

26  allegation of each and every cause of action alleged therein, and further expressly denies that as a

27  direct or proximate result of any acts or omissions on the part of Defendant, Plaintiff herein

28  sustained or suffered injury or damage in the amount alleged in the unverified Complaint, or in any

                                             1

amount at all, or that Plaintiff has suffered injury or damage for any reason in the sums alleged in the unverified Complaint, or in any other sum or sums, or at all.

By way of affirmative defenses to the allegations of the Complaint herein, Defendant alleges as follows:

**FIRST AFFIRMATIVE DEFENSE**

(Statute of Limitations)

Plaintiff's claims are barred to the extent that they were not filed within the applicable statutes of limitation, including, but not limited to, the California Fair Employment and Housing Act ("FEHA"), Government Code §§ 12940, 12960(d) and 12965(b), California Labor Code § 2698 *et. seq.*, California Code of Civil Procedure §§ 335.1, 337, 338(a), 339, 340 and 343, Business and Professions Code §§ 17200, 17208, or any other administrative regulation or requirement.

**SECOND AFFIRMATIVE DEFENSE**

(Failure to Exhaust Administrative Remedies)

Plaintiff's claims are barred to the extent Plaintiff has failed to exhaust her administrative remedies and are barred in whole or in part to the extent that Plaintiff's allegations exceed the scope of any administrative charge she may have filed.

**THIRD AFFIRMATIVE DEFENSE**

(Privileged/Justification/Managerial Immunity)

Plaintiff's Complaint and each purported claim alleged therein are barred because Defendant alleges that its conduct was a just and proper exercise of managerial discretion, undertaken for fair and honest reasons, comporting with good faith under the circumstances then existing, and was privileged and justified.

**FOURTH AFFIRMATIVE DEFENSE**

(Legitimate and Non-Discriminatory/Retaliatory Reasons/Business Necessity)

Plaintiff's Complaint, to the extent founded upon any alleged unlawful discrimination/retaliation, is barred because any and all actions taken by Defendant with respect to Plaintiff were taken in good faith for legitimate, non-discriminatory/retaliatory reasons, and were necessary in order to further the safe, lawful, and efficient operation of Defendant's business.

DEFENDANT THE PERMANENTE MEDICAL GROUP, INC.'S
ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT                    Case No. 20CV370951

## FIFTH AFFIRMATIVE DEFENSE

### (Same Decision)

Plaintiff's Complaint and each alleged cause of action are barred in whole or in part because assuming *arguendo* that discriminatory/retaliatory reasons were a factor in any employment decision involving Plaintiff, Defendant would have made the same employment decisions with regard to Plaintiff for legitimate, non-discriminatory, and non-retaliatory business reasons.

## SIXTH AFFIRMATIVE DEFENSE

### (Failure to Exercise Reasonable Care/Avoidable Consequences)

Plaintiff's Complaint, to the extent founded upon any alleged unlawful discrimination/retaliation, is barred because to the extent that any actions of Defendant could be construed as unlawful discrimination/retaliation (which it unequivocally denies), Defendant exercised reasonable care to prevent such conduct and would have taken immediate and appropriate corrective action to remedy and stop any such alleged misconduct if Plaintiff had informed it about the alleged misconduct. However, Plaintiff failed to utilize the preventive or corrective remedies provided to prevent and to otherwise avoid such harm. Plaintiff's claims are therefore barred in whole or limited in part by the doctrine of avoidable consequences.

## SEVENTH AFFIRMATIVE DEFENSE

### (After-Acquired Evidence)

Plaintiff's Complaint is barred in whole or in part by information obtained by Defendants as to misconduct sufficiently severe to justify any and all alleged adverse actions taken against her, including termination, such that the Complaint, and each purported claim alleged therein, is barred or Plaintiff's alleged damages are limited by the doctrine of after-acquired evidence.

## EIGHTH AFFIRMATIVE DEFENSE

### (Equitable Doctrines)

Defendant is informed and believes that any recovery on Plaintiff's Complaint, or any purported cause of action alleged therein, is barred under the equitable doctrines of estoppel, laches, consent, waiver, and/or unclean hands.

///

**NINTH AFFIRMATIVE DEFENSE**

(Failure to Reasonably Mitigate Damages)

Plaintiff is barred from recovering any damages, or any recovery must be reduced accordingly, by virtue of Plaintiff's failure to exercise reasonable diligence and/or failure to reasonably mitigate her alleged damages and/or failure to reasonably avoid the alleged harm.

**TENTH AFFIRMATIVE DEFENSE**

(Workers Compensation Exclusivity Doctrine)

To the extent Plaintiff claims any acts of Defendant or its employees caused her alleged emotional distress, or other injury or damage, all of which Defendant denies, the exclusive remedy for Plaintiff's alleged emotional distress and/or other injuries, if any, lies under the California Workers' Compensation Act, California Labor Code §§ 3600 et seq.

**ELEVENTH AFFIRMATIVE DEFENSE**

(Truth)

Defendant is informed and believes that Plaintiff's claims for defamation are barred on the grounds that any purported statements by Defendants were true or substantially true.

**TWELTH AFFIRMATIVE DEFENSE**

(Consent)

Defendant is informed and believes that Plaintiff's claims for defamation are barred on the basis that Plaintiff consented to any purported communication of the statements by Defendants to others.

**THIRTEENTH AFFIRMATIVE DEFENSE**

(Matters of Opinion)

Defendant is informed and believes that Plaintiff's claims for defamation are barred on the basis that any purported communication of the statements by Defendants to others concerned matters of opinion, rather than fact. (*Eisenberg v. Alameda Newspapers, Inc.* (1999) 74 Cal. App. 4th 1359, 1383.)

///

///

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Common Interest Privilege)

Defendant is informed and believes that Plaintiff's claims for defamation are barred on the basis that any purported statements were subject to the common interest privilege, as well as privileged communications about Plaintiff's employment. (*See Manguso v. Oceanside Unif. School Dist.* (1984) 153 Cal. App. 3d 574, 580–81.)

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Punitive Damages Unconstitutional)

To the extent that Plaintiff may seek punitive damages, Plaintiff's recovery is limited by applicable provisions of the California and/or United States Constitutions. Any award of punitive damages to Plaintiff in this case would be in violation of the constitutional safeguards provided to Defendant under the Constitution of the United States and/or the laws of the State of California.

## RESERVATION OF RIGHTS TO ASSERT ADDITIONAL DEFENSES

Plaintiff has failed to set out her claims, counts, and causes of action, if any, with sufficient particularity to permit Defendant to raise all potentially appropriate defenses, and thus Defendant reserve the right to state additional affirmative defenses as the bases for Plaintiff's purported claims, counts, and causes of action become known.

## PRAYER

WHEREFORE, Defendants pray for judgment as follows:

1. That Plaintiff take nothing by way of the Complaint;

2. That the Complaint and each claim for relief be dismissed in its entirety with prejudice;

3. That Plaintiff be denied each and every demand and prayer for relief contained in the Complaint;

4. For costs of suit incurred herein, including reasonable attorneys' fees, as and where permitted under California law; and

///

///

1         5.     For such other and further relief as the Court deems just and equitable.

2

3    Dated:  December 1, 2020                   JACKSON LEWIS P.C.

4

5                                      By: _____
         Kathleen M. Hurly
6        Gabriel N. Rubin
         Attorneys for Defendant
7        THE PERMANENTE MEDICAL
         GROUP, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| 1 | **PROOF OF SERVICE** |
| 2 |   I, Mary Stoner, declare that I am employed with the law firm of Jackson Lewis P.C., whose |
| 3 | address is 50 California Street, 9th Floor, San Francisco, California 94111; I am over the age of |
| 4 | eighteen (18) years and am not a party to this action. |
| 5 |   On December 1, 2020, I served the attached document(s): |
| 6 | **DEFENDANT THE PERMANENTE MEDICAL GROUP, INC.'S** |
| 7 | **ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT** |
| 8 | in this action as follows: |
| 9 | Lori J. Costanzo, Esq. |
| | Costanzo Law Firm, APC |
| 10 | 111 West St. John Street, Suite 700 |
| | San Jose, CA  95113 |
| 11 | Telephone:  (408) 993-8493 |
| | Facsimile:   (408) 993-9496 |
| 12 | E-mail:       Lori@costanzo-law.com |

[  ]  <u>BY MAIL</u>:  United States Postal Service by placing sealed envelopes with the postage thereon fully prepaid, placed for collection and mailing on this date, following ordinary business practices, in the United States mail at San Francisco, California.

[  ]  <u>BY HAND DELIVERY</u>:  I caused such envelope(s) to be delivered by Messenger Service to the above address.

[  ]  <u>BY OVERNIGHT DELIVERY</u>:  I caused such envelope(s) to be delivered to the above address within 24 hours by overnight delivery service.

[  ]  <u>BY FACSIMILE</u>:  I caused such document(s) to be transmitted by facsimile from our facsimile number 415.394.9401 to the fax number indicated above.

[  ]  <u>BY ELECTRONIC TRANSMISSION</u>:  I caused such document(s) to be electronically transmitted to the above email address (by written agreement, confirming letter dated and signed MM/DD/YY).

[ **X** ]  <u>BY DESIGNATED ELECTRONIC FILING SERVICE</u>:  I hereby certify that the above-referenced document(s) were served electronically on the parties listed above at their most recent known e-mail address or e-mail of record by submitting an electronic version of the document(s) to First Legal at efiling@firstlegal.com.

  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

  Executed on December 1, 2020 at Pleasant Hill, California.

<br>

_Mary Stoner_

_____
Mary Stoner

DEFENDANT THE PERMANENTE MEDICAL GROUP, INC.'S
ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT      Case No. 20CV370951

# EXHIBIT C

Kathleen M. Hurly (State Bar No. 169907)
Gabriel N. Rubin (State Bar No. 241659)
JACKSON LEWIS P.C.
50 California Street, 9th Floor
San Francisco, California 94111-4615
Telephone (415) 394-9400
Facsimile: (415) 394.9401
E-mail: Kathleen.Hurly@jacksonlewis.com
E-mail: Gabriel.Rubin@jacksonlewis.com

Attorneys for Defendants
THE PERMANENTE MEDICAL GROUP, INC.,
TRACI BEEBE AND LORETTA REGAN

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 4/21/2021 4:13 PM
Reviewed By: M Vu
Case #20CV370951
Envelope: 6289294**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SANTA CLARA

| | |
|---|---|
| SARAH MAJID, PsyD, an individual,<br><br>Plaintiff,<br><br>v.<br><br>KAISER PERMANENTE SAN JOSE MEDICAL CENTER; PERMANENTE MEDICAL GROUP INC.; TRACI BEEBE, an individual; LORETTA REGAN, an individual; and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 20CV370951<br><br>**DEFENDANTS TRACI BEEBE AND LORETTA REGAN'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT**<br><br><br>Complaint Filed: September 18, 2020<br>Trial Date: None Set |

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

Defendants TRACI BEEBE and LORETTA REGAN ("Defendants") hereby answers the Unverified Complaint ("Complaint") of Plaintiff SARAH MAJID ("Plaintiff") as follows:

## **GENERAL DENIAL**

Pursuant to Code of Civil Procedure section 431.30(d), Defendants generally denies each and every allegation of said unverified Complaint, and the whole thereof, and each and every allegation of each and every cause of action alleged therein, and further expressly denies that as a direct or proximate result of any acts or omissions on the part of Defendants, Plaintiff herein sustained or suffered injury or damage in the amount alleged in the unverified Complaint, or in any

1

amount at all, or that Plaintiff has suffered injury or damage for any reason in the sums alleged in the unverified Complaint, or in any other sum or sums, or at all.

By way of affirmative defenses to the allegations of the Complaint herein, Defendants alleges as follows:

## FIRST AFFIRMATIVE DEFENSE

(Statute of Limitations)

Plaintiff's claims are barred to the extent that they were not filed within the applicable statutes of limitation, including, but not limited to, the California Fair Employment and Housing Act ("FEHA"), Government Code §§ 12940, 12960(d) and 12965(b), California Labor Code § 2698 *et. seq.*, California Code of Civil Procedure §§ 335.1, 337, 338(a), 339, 340 and 343, Business and Professions Code §§ 17200, 17208, or any other administrative regulation or requirement.

## SECOND AFFIRMATIVE DEFENSE

(Truth)

Defendants are informed and believes that Plaintiff's claims for defamation are barred on the grounds that any purported statements by Defendants were true or substantially true.

## THIRD AFFIRMATIVE DEFENSE

(Consent)

Defendants are informed and believes that Plaintiff's claims for defamation are barred on the basis that Plaintiff consented to any purported communication of the statements by Defendants to others.

## FOURTH AFFIRMATIVE DEFENSE

(Matters of Opinion)

Defendants are informed and believes that Plaintiff's claims for defamation are barred on the basis that any purported communication of the statements by Defendants to others concerned matters of opinion, rather than fact. (*Eisenberg v. Alameda Newspapers, Inc.* (1999) 74 Cal. App. 4th 1359, 1383.)

///

///

**FIFTH AFFIRMATIVE DEFENSE**

(Common Interest Privilege)

Defendants are informed and believes that Plaintiff's claims for defamation are barred on the basis that any purported statements were subject to the common interest privilege, as well as privileged communications about Plaintiff's employment. (*See Manguso v. Oceanside Unif. School Dist.* (1984) 153 Cal. App. 3d 574, 580–81.)

**SIXTH AFFIRMATIVE DEFENSE**

(Punitive Damages Unconstitutional)

To the extent that Plaintiff may seek punitive damages, Plaintiff's recovery is limited by applicable provisions of the California and/or United States Constitutions. Any award of punitive damages to Plaintiff in this case would be in violation of the constitutional safeguards provided to Defendants under the Constitution of the United States and/or the laws of the State of California.

**RESERVATION OF RIGHTS TO ASSERT ADDITIONAL DEFENSES**

Plaintiff has failed to set out her claims, counts, and causes of action, if any, with sufficient particularity to permit Defendants to raise all potentially appropriate defenses, and thus Defendants reserve the right to state additional affirmative defenses as the bases for Plaintiff's purported claims, counts, and causes of action become known.

**PRAYER**

WHEREFORE, Defendants pray for judgment as follows:

1. That Plaintiff take nothing by way of the Complaint;

2. That the Complaint and each claim for relief be dismissed in its entirety with prejudice;

3. That Plaintiff be denied each and every demand and prayer for relief contained in the Complaint;

4. For costs of suit incurred herein, including reasonable attorneys' fees, as and where permitted under California law; and

///

///

3

5.    For such other and further relief as the Court deems just and equitable.


Dated:  April 21, 2021                          JACKSON LEWIS P.C.


                                     By:    _____
                                            Kathleen M. Hurly
                                            Gabriel N. Rubin
                                            Attorneys for Defendants
                                            THE PERMANENTE MEDICAL
                                            GROUP, INC., TRACI BEEBE and
                                            LORETTA REGAN

**PROOF OF SERVICE**

I, Fatimah Sikin, declare that I am employed with the law firm of Jackson Lewis P.C., whose

address is 50 California Street, 9th Floor, San Francisco, California 94111; I am over the age of

eighteen (18) years and am not a party to this action.

On April 21, 2021, I served the attached document:

**DEFENDANTS TRACI BEEBE AND LORETTA REGAN'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT**

in this action as follows:

Lori J. Costanzo, Esq.
Costanzo Law Firm, APC
111 West St. John Street, Suite 700
San Jose, CA  95113
Telephone:   (408) 993-8493
Facsimile:    (408) 993-9496
E-mail:        Lori@costanzo-law.com

[  ]    BY MAIL:  United States Postal Service by placing sealed envelopes with the postage thereon fully prepaid, placed for collection and mailing on this date, following ordinary business practices, in the United States mail at San Francisco, California.

[  ]    BY HAND DELIVERY:  I caused such envelope(s) to be delivered by Messenger Service to the above address.

[  ]    BY OVERNIGHT DELIVERY:  I caused such envelope(s) to be delivered to the above address within 24 hours by overnight delivery service.

[ X ]    BY DESIGNATED ELECTRONIC FILING SERVICE:  I hereby certify that the above-referenced document(s) were served electronically on the parties listed above at their most recent known e-mail address or e-mail of record by submitting an electronic version of the document to Express Network at sf@expressnetworkas.com.

I declare under penalty of perjury under the laws of the State of California that the above is

true and correct.

Executed on April 21, 2021 at San Francisco, California.

_____
Fatimah Sikin

4841-6297-4178

# EXHIBIT D

Lori J. Costanzo, SBN 142633
Mallory A. Barr, SBN 317231
COSTANZO LAW FIRM, APC
111 West Saint John Street, #700
San Jose, CA 95113
Phone:     408.993.8493
Fax:        408.993.8496
Email: Lori@costanzo-law.com
Mallory.barr@costanzo-law.com

Attorneys for **Plaintiff, Sarah Majid**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SANTA CLARA - UNLIMITED JURISDICTION

| | |
|---|---|
| SARAH MAJID<br><br>       Plaintiff,<br><br>    v.<br><br>PERMANENTE MEDICAL GROUP INC.;<br>TRACI BEEBE, an individual; LORETTA<br>REGAN, an individual; and DOES 1-50,<br>Inclusive.<br><br><br>          Defendants. | Case No.: **20CV370951**<br><br>**PLAINTIFF SARAH MAJID'S**<br>**SUPPLEMENTAL RESPONSES TO**<br>**DEFENDANT THE PERMANENTE**<br>**MEDICAL GROUP, INC.'S FORM**<br>**INTERROGATORIES – GENERAL, SET**<br>**ONE** |

PROPOUNDING PARTY:      Defendant THE PERMANENTE MEDICAL GROUP, INC.

RESPONDING PARTY:        Plaintiff SARAH MAJID

SET NUMBER:                 One (Supplemental)

PLAINTIFF SARAH MAJID'S SUPPLEMENTAL RESPONSES TO DEFENDANT THE PERMANENTE
MEDICAL GROUP, INC.'S FORM INTERROGATORIES – GENERAL, SET ONE

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET #700
SAN JOSE, CA 95113

1   and/or attorney work product privileges; no such information will be produced.  Plaintiff objects to

2   this request to the extent it seeks premature disclosure of expert information; no such information

3   will be produced.  Plaintiff objects to the request on the grounds discovery is on-going; Plaintiff

4   reserves the right to supplement her response.

5          Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

6          This question is inapplicable to the claims at issue.

7   **FORM INTERROGATORY NO. 50.1:**

8          For each agreement alleged in the pleadings:

9          (a)    identify each DOCUMENT that is part of the agreement and for each state the name,

10                ADDRESS, and telephone number of each PERSON who has the DOCUMENT:

11         (b)    state each part of the agreement not in writing, the name, ADDRESS, and telephone

12                number of each PERSON agreeing to that provision, and the date that part of the

13                agreement was made;

14         (c)    identify all DOCUMENTS that evidence any part of the agreement not in writing

15                and for each state the name, ADDRESS, and telephone number of each PERSON

16                who has the DOCUMENT.

17         (d)    identify all DOCUMENTS that are part of any modification to the agreement, and

18                for each state the name, ADDRESS, and telephone number of each PERSON who

19                has the DOCUMENT;

20         (e)    state each modification not in writing, the date, and the name, ADDRESS, and

21                telephone number of each PERSON agreeing to the modification, and the date the

22                modification was made;

23         (f)    identify all DOCUMENTS that evidence any modification of the agreement not in

24                writing and for each state the name, ADDRESS, and telephone number of each

25                PERSON who has the DOCUMENT.

26  **RESPONSE TO FORM INTERROGATORY NO. 50.1:**

27         Plaintiff objects to this request as vague and ambiguous, overbroad, and unduly burdensome.

28  "INCIDENT" is vague, ambiguous, overbroad, and unduly burdensome, and, as defined, renders the

PLAINTIFF SARAH MAJID'S SUPPLEMENTAL RESPONSES TO DEFENDANT THE PERMANENTE
MEDICAL GROUP, INC.'S FORM INTERROGATORIES – GENERAL, SET ONE

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET #700
SAN JOSE, CA 95113

request unintelligible. Plaintiff further objects to this request on the grounds it seeks information already in Defendant's possession. Plaintiff objects to this request on the grounds it would require compilation of an abstract; Plaintiff will produce the relevant, non-privileged documents instead. Plaintiff objects to the request on the grounds it calls for a legal conclusion. Plaintiff objects to this request to the extent it seeks information protected by the attorney-client and/or attorney work product privileges; no such information will be produced. Plaintiff objects to this request to the extent it seeks premature disclosure of expert information; no such information will be produced. Plaintiff objects to the request on the grounds discovery is on-going; Plaintiff reserves the right to supplement her response.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

Plaintiff was party to her employment agreement with Kaiser and any related collective bargaining agreements related to her employment with Kaiser. Kaiser has copies of these, including any and all modifications thereto.

## SUPPLEMENTAL RESPONSE TO FORM INTERROGATORY NO. 50.1:

Plaintiff objects to this request as vague and ambiguous, overbroad, and unduly burdensome. "INCIDENT" is vague, ambiguous, overbroad, and unduly burdensome, and, as defined, renders the request unintelligible. Plaintiff further objects to this request on the grounds it seeks information already in Defendant's possession. Plaintiff objects to this request on the grounds it would require compilation of an abstract; Plaintiff will produce the relevant, non-privileged documents instead. Plaintiff objects to the request on the grounds it calls for a legal conclusion. Plaintiff objects to this request to the extent it seeks information protected by the attorney-client and/or attorney work product privileges; no such information will be produced. Plaintiff objects to this request to the extent it seeks premature disclosure of expert information; no such information will be produced. Plaintiff objects to the request on the grounds discovery is on-going; Plaintiff reserves the right to supplement her response.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

Plaintiff entered into a written employment agreement, by virtue of the agreement between her Union and her employer. Plaintiff further entered an implied in fact contract with Defendant.

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET #700
SAN JOSE, CA 95113

Plaintiff contends based on information presently available to her and subject to further discovery, that:

(1) Defendant's policies and procedures implied Plaintiff would not be terminated without just cause and without being warned and advised by her union;

(2) Plaintiff had been a long-time employee of Defendant. Plaintiff initially was hired by Defendants in 2002 and completed a three-year long fellowship followed by a position as a psychologist. Plaintiff was employed by Defendants for nearly two decades at the time of her wrongful termination;

(3) Defendants repeatedly assigned Plaintiff excess amounts of work and were conscious of the fact that she repeatedly made management aware of her need for assistance to ease her workload. While Plaintiff had been warned once, in 2013, no formal complaints against her were filed against her through her union. To the contrary, Defendants repeatedly ignored her pleas for help and added more to her workload as Dr. Richard Beaver, PhD, regularly reduced his hours and ignored his own duties. It was implied through communications and actions by Defendants that Plaintiff would not be terminated so long as she continued to perform;

(4) Plaintiff was a union member, as such the industry standard would require Defendants adhere to the collective bargaining agreement and terminate Plaintiff only with just cause.

Plaintiff was party to her employment agreement with Kaiser and any related collective bargaining agreements related to her employment with Kaiser. Kaiser has copies of these, including its policies and procedures, the collective bargaining agreement, any and all modifications thereto.

**FORM INTERROGATORY NO. 50.2:**

Was there a breach of any agreement alleged in the pleadings? If so, for each breach describe and give the date of every act or omission that you claim is the breach of the agreement.

**RESPONSE TO FORM INTERROGATORY NO. 50.2:**

PLAINTIFF SARAH MAJID'S SUPPLEMENTAL RESPONSES TO DEFENDANT THE PERMANENTE
MEDICAL GROUP, INC.'S FORM INTERROGATORIES – GENERAL, SET ONE

Plaintiff objects to this request as vague and ambiguous, overbroad, and unduly burdensome. "INCIDENT" is vague, ambiguous, overbroad, and unduly burdensome, and, as defined, renders the request unintelligible. Plaintiff further objects to this request on the grounds it seeks information already in Defendant's possession. Plaintiff objects to the request on the grounds it calls for a legal conclusion. Plaintiff objects to this request to the extent it seeks information protected by the attorney-client and/or attorney work product privileges; no such information will be produced. Plaintiff objects to this request to the extent it seeks premature disclosure of expert information; no such information will be produced. Plaintiff objects to the request on the grounds discovery is on-going; Plaintiff reserves the right to supplement her response.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

Plaintiff was subject to her employment agreement with Kaiser and any related collective bargaining agreements related to her employment with Kaiser. Kaiser has copies of these, including any and all modifications thereto. Plaintiff understands and believes her employment agreement with Kaiser incorporated the various employment laws Plaintiff contends Kaiser violated.

## SUPPLEMENTAL RESPONSE TO FORM INTERROGATORY NO. 50.2:

Plaintiff objects to this request as vague and ambiguous, overbroad, and unduly burdensome. "INCIDENT" is vague, ambiguous, overbroad, and unduly burdensome, and, as defined, renders the request unintelligible. Plaintiff further objects to this request on the grounds it seeks information already in Defendant's possession. Plaintiff objects to the request on the grounds it calls for a legal conclusion. Plaintiff objects to this request to the extent it seeks information protected by the attorney-client and/or attorney work product privileges; no such information will be produced. Plaintiff objects to this request to the extent it seeks premature disclosure of expert information; no such information will be produced. Plaintiff objects to the request on the grounds discovery is on-going; Plaintiff reserves the right to supplement her response.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

Plaintiff was party to her employment agreement with Kaiser and any related collective bargaining agreements related to her employment with Kaiser. Kaiser has copies of these,

including its policies and procedures, the collective bargaining agreement, any and all modifications thereto. Plaintiff understands and believes her employment agreement with Kaiser incorporated the various employment laws Plaintiff contends Kaiser violated.

Defendants breached the employment agreement by terminating Plaintiff without just cause on or about November 20, 2018, as detailed above

Defendants breached the covenant of good faith and fair dealing. The covenant of good faith and fair dealing is implied in every contract in that both parties will be faithful to the agreed contract; it is fundamental and implied in the employment relationship. Plaintiff performed all conditions, covenants, and promises required consistent with a course of conduct or as a result of usage of trade or personal understanding between Plaintiff and Defendants, as well as complying with and performing all conditions consistent with her written employment agreement with Kaiser. Defendants voluntarily accepted Plaintiff's performance in accordance with the terms and conditions of both parties' written and implied-in-fact employment contract.

## FORM INTERROGATORY NO. 50.3:

Was performance of any agreement alleged in the pleadings excused? If so, identify each agreement excused and state why performance was excused.

## RESPONSE TO FORM INTERROGATORY NO. 50.3:

Plaintiff objects to this request as vague and ambiguous, overbroad, and unduly burdensome. "INCIDENT" is vague, ambiguous, overbroad, and unduly burdensome, and, as defined, renders the request unintelligible. Plaintiff further objects to this request on the grounds it seeks information already in Defendant's possession. Plaintiff objects to the request on the grounds it calls for a legal conclusion. Plaintiff objects to this request to the extent it seeks information protected by the attorney-client and/or attorney work product privileges; no such information will be produced. Plaintiff objects to this request to the extent it seeks premature disclosure of expert information; no such information will be produced. Plaintiff objects to the request on the grounds discovery is on-going; Plaintiff reserves the right to supplement her response.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: No.

PLAINTIFF SARAH MAJID'S SUPPLEMENTAL RESPONSES TO DEFENDANT THE PERMANENTE MEDICAL GROUP, INC.'S FORM INTERROGATORIES – GENERAL, SET ONE

**FORM INTERROGATORY NO. 50.4:**

Was any agreement alleged in the pleadings terminated by mutual agreement, release, accord and satisfaction, or novation? If so, identify each agreement terminated, the date of termination, and the basis of the termination.

**RESPONSE TO FORM INTERROGATORY NO. 50.4:**

Plaintiff objects to this request as vague and ambiguous, overbroad, and unduly burdensome. "INCIDENT" is vague, ambiguous, overbroad, and unduly burdensome, and, as defined, renders the request unintelligible. Plaintiff further objects to this request on the grounds it seeks information already in Defendant's possession. Plaintiff objects to the request on the grounds it calls for a legal conclusion. Plaintiff objects to this request to the extent it seeks information protected by the attorney-client and/or attorney work product privileges; no such information will be produced. Plaintiff objects to this request to the extent it seeks premature disclosure of expert information; no such information will be produced. Plaintiff objects to the request on the grounds discovery is on-going; Plaintiff reserves the right to supplement her response.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows: No.

**FORM INTERROGATORY NO. 50.5:**

Is any agreement alleged in the pleadings unenforceable? If so, identify each unenforceable agreement and state why it is unenforceable.

**RESPONSE TO FORM INTERROGATORY NO. 50.5:**

Plaintiff objects to this request as vague and ambiguous, overbroad, and unduly burdensome. "INCIDENT" is vague, ambiguous, overbroad, and unduly burdensome, and, as defined, renders the request unintelligible. Plaintiff further objects to this request on the grounds it seeks information already in Defendant's possession. Plaintiff objects to the request on the grounds it calls for a legal conclusion. Plaintiff objects to this request to the extent it seeks information protected by the attorney-client and/or attorney work product privileges; no such information will be produced. Plaintiff objects to this request to the extent it seeks premature disclosure of expert

COSTANZO LAW FIRM, APC
111 W. ST. JOHN STREET #700
SAN JOSE, CA 95113

information; no such information will be produced. Plaintiff objects to the request on the grounds discovery is on-going; Plaintiff reserves the right to supplement her response.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

No.

## FORM INTERROGATORY NO. 50.6:

Is any agreement alleged in the pleadings ambiguous? If so, identify each ambiguous agreement and state why it is ambiguous.

## RESPONSE TO FORM INTERROGATORY NO. 50.6:

Plaintiff objects to this request as vague and ambiguous, overbroad, and unduly burdensome. "INCIDENT" is vague, ambiguous, overbroad, and unduly burdensome, and, as defined, renders the request unintelligible. Plaintiff further objects to this request on the grounds it seeks information already in Defendant's possession. Plaintiff objects to the request on the grounds it calls for a legal conclusion. Plaintiff objects to this request to the extent it seeks information protected by the attorney-client and/or attorney work product privileges; no such information will be produced. Plaintiff objects to this request to the extent it seeks premature disclosure of expert information; no such information will be produced. Plaintiff objects to the request on the grounds discovery is on-going; Plaintiff reserves the right to supplement her response.

Subject to and without waiving the foregoing objections, Plaintiff responds as follows:

No.

Dated: November 3, 2021                    COSTANZO LAW FIRM, APC

_____
Lori J. Costanzo
Mallory A. Barr
Attorneys for Plaintiff Sarah Majid

PLAINTIFF SARAH MAJID'S SUPPLEMENTAL RESPONSES TO DEFENDANT THE PERMANENTE MEDICAL GROUP, INC.'S FORM INTERROGATORIES – GENERAL, SET ONE